Daniels, J.
The petitioners reside, two of them in Antwerp and the other in Paris, and are sworn to own in the aggregate $345,000 of the bonds of the Erie Railway Company, secured by its second consolidated mortgage, which was executed and delivered to the plaintiff as trustee for the holders of such bonds. This action has been instituted as it now stands for the *248 foreclosure of that mortgage, and the sale of the mortgaged property. A plan has been adopted for the acquisition of the mortgaged property, and the formation of a new corporation to own and operate it, which has received the assent of most of the bondholders under this and the preceding mortgage, and the other persons interested in the property ; and in conformity to that plan and the understanding of those who are desirous of promoting it, a judgment has been entered in this action. A minority of the bondholders appear to dissent from this plan and the proceedings taken to render it effectual; and in support of their dissent it has been maintained that they have been unjustly discriminated against by those engaged in the success of this plan, that the plaintiff as their trustee has espoused the interests of those supporting and expecting to be benefited by it, and that together they have allowed the receiver, who has had charge of the property and managed the affairs of the railroad company since May 26, 1875, an improper measure of compensation for himself and extravagant charges claimed for expenditures in the performance of his trust. Much proof has been submitted in support of these charges, and others of a similar but more incidental nature ; and they have been met by direct denials and sustaining evidence on the part of the parties whose conduct has thus been brought in question. The most serious of these charges, as well indeed all of them, may, in the end, appear to be without foundation; but, as the evidence now appears, there seems to be reason for believing that the plan adopted for the sale of the mortgaged property, and the reorganization of the company, nas, to a certain extent at least, been devised for the more complete protection of those assenting to and sustaining it, than of others not as extensively interested in the property and franchises to be affected *249 by its success ; and it also appears tó be the fact that the plan has secured the friendly co-operation of the plaintiff. That may very well have been yielded, because of the conviction that it was the best thing that could be done for the persons interested in the securities held by it; and such a conclusion may yet prove entirely proper and just; for in the foreclosure and sale of so vast a property, and interests so diversified and extensive, the ordinary course of proceeding must prove entirely inadequate to the exigencies of the case. But few combinations of capital could be secured which would be adequate to the purchase of such property and interests ; and if one could be created that would make the purchase, it would only be upon terms that must prove injurious if not ruinous to many of the interested individual owners of bonds and stock. Primarily for those reasons the Legislature of the State has made provision by the enactment of laws, for the persons in interest in such cases, among themselves to devise and adopt a suitable mode for the sale and transfer of the property for their own immediate benefit and for its future use by a new organization created in their interest (L. 1874 c. 430 ; L. 1876, c. 446). And without such legislation similar expedients have been found to be indispensable, and have been sanctioned when fairly and justly planned by the approbations of courts of justice. The interests to be protected and the objects to be secured can be practically and fairly promoted in no other way. f Bat at the same time neither the statutes nor the principles properly applicable to such an emergency will justify any discrimination which jeopardizes the rights or interests of those who may withhold their approbation. These rights and interests, while in a certain degree they are mutual, are still beyond that separate and distinct, and each owner must exercise his own judgment as to whar may be best for himself. This is a right secured to *250 all owners of property, and if the' convictions of the minority should materially differ from those of the majority as to what may be most advisable or expedient, that difference should not be made a reason for depriving them of their just proportion of the benefits ultimately to be secured from the success of the plan deemed most feasible by the majority. They should still be allowed, so far as that may be done, to enjoy the advantages which they can properly claim as persons interested in the enterprise, and it may very well be that these interests of the minority have been properly cared for and guarded in this instance. ,5 Whether that be so or not, it is not necessary now to determine.
It does appear that the plaintiff has given its friendly co-operation to the success of this plan, and for that reason it may not have scrutinized as closely as it otherwise would, and as it certainly should, the charges made against the mortgaged property. It has been very positively, and certainly with some degree of plausibility, averred that it has been remiss in this respect. \ The plaintiff in its reply to these allegations has affirmed its constant readiness to contest any item to which its attention might have been directed as improper by any one of the bondholders suggesting its interposition. But that was not the full measure of its duty in this respect. It was bound by its relation to the bondholders to see that the property securing their obligations was not improperly burdened by unjust demands or unnecessary expenditures, and from the examination into the accounts, as they have been subjected to the investigation of the learned referee in the case, that may have been already thoroughly accomplished. But still the truth of the matter is very positively affirmed to be the other way, and as this has been done in the interest of parties entitled to the favorable consideration of courts of justice, they ought to be afforded an opportunity for the vindication of their *251 rights by an ample investigation. Of this the receiver himself has felt the propriety, for in his letter to the referee on the 15th of September, 1877, he suggested that persons having a substantial interest in the proceedings, as an owner "of the bonds, &c., might be allowed C6to be present in person or by representatives,’ ’ and to raise any question which may be proper concerning the accounts. This was an entirely just and proper thing to be done, and it probably resulted from his own convictions that the charges made would in the end prove to have been without foundation. But it has been declared in support of the application made, that this liberty, for some reason not necessary to be now considered, has not been enjoyed by bondholders desirous of availing themselves of it, and it appears probable that they have been obliged to submit to some restraint inconsistent with entire freedom in this respect. That, however, has been denied, and possibly their conclusions may have been more imaginary than real. But as the plaintiff has apparently given in its adhesion to the success of the purposes of the majority who support the plan adopted for the sale and reorganization, those who are otherwise inclined ought to be at least placed in a position where they may be able to protect their interests against unjust or unlawful charges. This has been rendered specially important by the provisions of the statutes declaring that no suit or proceeding shall be commenced- against such a receiver unless founded on willful misconduct or fraud in his trust, except as shall be commenced before the expiration of sixty days from the time of the discharge of such receiver, but after that the proceeding, if taken at all, must be against the newly formed corporation {L. 1876, p. 482, § 3). Under the exigency thus created, whatever may be attempted for the reduction of the charges made by the receiver, must be accomplished with all reasonable diligence. Otherwise the burden *252 may be changed from him so as to incumber the interests now proposed to be relieved from it.
In no view which can be taken of the case as it has been, now presented on behalf of these applicants, would the court be justified in denying the prayer of their petition. And if their charges are not well founded it is due to the plaintiff, as a trustee, to the receiver, subjected to similar obligations, and to the majority who favor the success of their present plan, that they should be relieved from the aspersions which these charges embody. Beyond that, the court would not be just to itself if it should deny the opportunity claimed for the proposed investigation. As bondholders these persons are entitled to know what charges are to be made against the property incumbered for their security, and under the circumstances that can only be surely done by allowing them to become so far parties to the action as to enable them, by proper exceptions, investigations and proofs, to examine into the charges which they allege to have been improperly included in the accounts and the judgments.:
The practice of the court will allow that to be done (Gould v. Mortimer, 16 Abb. Pr. 448 ; Schenck v. Ingraham, 5 Hun, 397); and the exercise of such a power is a necessity to the complete administration of justice, and its existence has not been questioned by either of the learned counsel engaged in opposing this application. It has, however, been denied, under circumstances of a plausible nature, that the applicants do in fact own the bonds claimed to be held by them, and the affidavit by which their petition has been verified has been objected to as unsatisfactory evidence on this subject. An examination of the affidavit has resulted in the conclusion that this view of it is altogether too critical. For it seems to have been the intention of the person making it to swear directly and positively that these applicants did own the bonds mentioned in their petition. But if the fact be other *253 wise, that will appear in the investigation which will follow this decision. For they must substantiate their title as a matter of fact before the referee, before they can be permitted to question the charges and proceedings which are objected to as injurious to their interests. The application made in their behalf must be allowed to prevail to the extent already indicated, and subject to proof of the fact that the bonds on which they have based it are owned by them, as they have alleged them to be in their petition. Various alleged irregularities have been urged as reasons why the judgment entered in the action should be entirely set aside. But all the relief the applicants can be entitled to can be awarded to them without interfering with the proceedings to that extent, and for that reason it is not necessary to consider whether these objections are well founded or not.*

 The order entered (omitting title and recitals), was as follows :
Ordered, That the prayer of the said petition be and the same is hereby granted so far as to allow the said petitioners, Albert De Betz, Moritz Lewin Borchard, and Jules Levita, to be made parties defendant to this action, and to appear before the referee hereinafter appointed, and, after proving and establishing their title as owners, or the title of either of them as owner, to the bonds mentioned in the said petition, or to some part or portion of such bonds, to present charges and specifications in writing, verified by affidavit, against the said Hugh J. Jewett, receiver, Ms management and accounts, and to surcharge and falsify the same, and subject to the proof of title as aforesaid, to attend by counsel upon the examination hereinafter ordered of the said receiver’s accounts and acts, and to give evidence upon and contest, before the said referee, the spveral items of alleged indebtedness claimed to be proper charges as to the said mortgaged property prior to the lien of the said second consolidated mortgage, and the several executory contracts of the said receiver, claimed to have been lawfully made by him, and to be liens upon the said mortgaged property, and subject to which the same is adjudged by the judgment to be sold;
And also to inquire into and investigate the acts and doings of the receiver, against which the purchaser under such judgment is to indemnify and hold harmless the said receiver, and also to investigate *254 and inquire into and give evidence as to tile property properly subject, to the lien of the said mortgage, which it may be shown has been omitted from said judgment or the sale to be made under it.
It is further ordered that William Allen Butler, Esq., counselor-at-law, of the city of Mew York, be and he hereby is appointed referee to take testimony upon, determine and report to this court, with the testimony taken by him upon the following questions, viz.:
1st. The ownership as aforesaid by the said petitioners, of bonds secured by the second consolidated mortgage mentioned in the complaint herein, and the amount of bonds so held.
2d. Upon the facts and circumstances set forth in the said petition of De Betz, Borchard and Levita, so far as they relate to any or either of the matters herein mentioned.
3d. Upon the amount of lawful indebtedness of the receiver, incurred by him in the execution of his trust, properly constituting a lien upon the mortgaged premises prior to the lien of the said second consolidated mortgage.
4th. Upon the contracts lawfully made by the said receiver, executory in their character, chargeable against the mortgaged property.
5th. Upon such charges against the said receiver, his management and accounts, and included in such specifications, as may be presented before the said referee by the said petitioners.
6th. Upon all items of the said receiver’s accounts, which are called in question before said referee by said bondholders, and upon which evidence is given tending to surcharge or falsify.
7th. The amount of indebtedness secured by mortgage or otherwise, chargeable against the said mortgaged premises.
8th. As to the amount of outstanding bonds and coupons upon bonds, secured by the said second consolidated mortgage.
And it is further ordered that each and every of the books, papers, accounts, vouchers, contracts, and other evidences in the possession of the receiver, or of the said The Erie Railway Company, their agents, attorneys, or servants, so far .as the same relate to the accounts, claims, charges or matters so to be examined, shall be open to the full and free inspection and examination of the petitioners and their attorneys, or counsel for the said petitioners, before the said referee, and shall be produced and exhibited to said bondholders or their attorneys and counsel so attending before said referee, as they may require. But neither the same, nor any portion thereof, shall be removed from the proper depositories thereof, as the same are and have been kept and preserved by the Erie Railway Company and its receiver, unless in the judgment of the referee thal> can be done without deranging, interrupting or interfering with the business of the said Erie Railway *255 Company, and not then, unless a further and more complete examination shall appear to be necessary for the purpose of completing the examination and investigation, hereby allowed and directed, than can be secured or had at the place or places where said books, papers, accounts and contracts may be deposited.
And it is further ordered that the attorneys of the said petitioners, and of the said plaintiffs, and of the Erie Railway Company, and the said receiver or Ins attorney, shall have notice of all the proceedings on the said reference and relating thereto, and have notice of all proceedings in this action hereinafter had or taken.
And it is further ordered and directed that the sale of said mortgaged premises be, and the same hereby is postponed for the period of thirty days, and the referee, by whom the sale is to be made, is hereby directed to adjourn said sale accordingly.
And it is further ordered and directed that the said sale be, and it hereby is, further postponed, until the said referee, hereby appointed, shall make his report and the same shall be confirmed, unless the plaintiff and the defendant, the Erie Railway Company, shall, within fifteen days from the service of a copy of this order upon their respective attorneys, stipulate that all such amounts or sums as may appear, by the report of the referee hereby appointed, as the result of his examination of such accounts, charges and specifications, to be contained in or established by said judgment, as liens upon or charges against said mortgaged property, or any portion thereof, which should not have been allowed as such liens or charges, shall be deducted from the said judgment, and that the said judgment shall be corrected as to such amounts, so as to conform to the actual amount or amounts of sueh indebtedness. And unless the said attorneys shall further stipulate that all such sum, or sums, as may by the said referee’s report and the confirmation thereof, appear to have been charged in any form against said property, or any part thereof, or as shall have been in any form allowed to the receiver of the Erie Railway Company, which legally and justly should not have been so charged or allowed, shall be deducted from the sums or amounts allowed as charges against said mortgaged property, or in favor of the said receiver, as the case may .be; but if the plaintiff or any other party in interest shall tender and offer to pay to the petitioners, or their attorneys, such sum or sums as shall be equivalent to their interest, as bondholders, in any overcharges that may be found by the referee, then the foregoing provisions of the stipulation shall be void, z and shall further stipulate that upon the surrender of their bonds and coupons, or those of either of them, within the said period of thirty days, or such other period not exceeding sixty days, as shall be here *256 after allowed by the further order of this court, the said petitioners, or the petitioner or petitioners, so surrendering such bonds and coupons, shall on compliance with such terms as the other bondholders have, in other respects, already performed, equally participate with them in the benefits and advantages to be derived or secured from the sale of said mortgaged property, or from or by reason of the formation of another railway corporation, to own, operate, and manage said mortgaged property and the franchises of said Erie Railway Company, so as to place them upon an equality with the bondholders who have heretofore assented to the plan already adopted for those purposes. And in case such stipulation shall be given as above provided, then and in that case the further postponement of the said sale beyond the Said period of thirty days, hereinabove ordered, shall be and hereby is denied.
And it is further ordered that all the further and other questions arising upon said petition be and they are hereby reserved until the coming in of said report. Ho judgment, order or decree heretofore made in this action is to be deemed as set aside or vacated hereby, but the referee will be at liberty to make such inquiries in the premises upon the specifications herein provided for, as are herein directed or provided for, and notwithstanding such judgment, orders, or decree, or either of them.
Either party to the said proceeding before said referee shall be at liberty to apply from time to time to the court for such further directions as may appear to be necessary; and the said referee, on the application of any party in interest, may issue commissions to take the depositions of witnesses residing ont of the jurisdiction of this court, whose evidence may appear to be material to the consideration of any or either of the charges, matters, or things to be heard, or considered, or investigated by him.
This order, as corrected, is to be entered as of the date of March 25, 1878.