CLINTON TRUST COMPANY, as Successor Trustee under a Trust Mortgage Dated June 1, 1927, Executed by 142–144 JORALEMON STREET CORPORATION, Respondent, *v.* 142–144 JORALEMON STREET CORPORATION and Others, Defendants, Impleaded with BROOKLYN HEIGHTS MEDICAL BUILDING, INC., and Another, Appellants.

Second Department, March 10, 1933.

*Meyer Kraushaar* [*Jesse Climenko* with him on the brief], for the appellants.

*Mark Hyman*, for the respondent.

SCUDDER, J. Were this an appeal from the usual judgment of foreclosure and sale, the plaintiff, respondent, would be entitled to an affirmance.

Due, however, to the raising anew of certain collateral objections, considered on former appeals, but now for the first time presented in the record through the medium of documentary evidence, we deem it presently our duty to prescribe the procedure to be followed by the trial court in its consideration of the issues presented by these objections.

The action was brought to foreclose a trust mortgage covering a large business building, against which mortgage certificates of participation or bonds have been issued and sold to the public.

The corporation mortgagor having become financially embarrassed, the enterprise has come to grief, defaults have been suffered, and this foreclosure has followed. When this happened, holders of the participation certificates or bonds grouped themselves into committees, each committee having for its purpose the promotion of some plan of reorganization, of refinancing or for some other disposition of the mortgaged property.

The real controversy before us is between two groups of bond or certificate holders in respect to a reorganization plan of the mortgaged property, to be put into execution following its sale in foreclosure under the judgment from which this appeal is taken.

It appears that Commonwealth Bond Corporation has been instrumental in financing corporations organized to construct and operate large business buildings and apartment houses, through the sale to the public of bonds, or certificates of participation, issued against trust mortgages covering the particular properties. It is charged that defaults occurring in the payment of interest and other obligations under such a mortgage and foreclosure resulting, stimulated or otherwise by Commonwealth Bond Corporation, that corporation, having effected the sale of the bonds to the public and possessing a list of the bondholders, is wont to circularize the somewhat widely scattered purchasers of bonds, with a view to inducing them to deposit their certificates under an agreement sketchily outlined wherein Commonwealth proposes to seek to salvage the mortgaged property in the interest of the bondholders and to perfect its reorganization with a new capitalization.

It. is .said that this course has been pursued in the case at bar, and it is charged that, under its scheme of refinancing, Commonwealth, while professing the intention to serve the interest of such bondholders as shall agree to its plan of reorganization, manifests scant interest in those bondholders who do not agree thereto and fail to deposit their bonds.

It also is claimed that to carry into effect its plan of reorganization it was essential that the mortgage in suit should be foreclosed; and appellants charge that the sole purpose of the foreclosure is the promotion of the reorganization scheme devised to further Commonwealth's selfish ends, even as against bondholders who assent to its plan.

It is charged that Commonwealth has a stake of its own to promote in the matter of payments to itself of the expense of the reorganization, in the fixing of its compensation, and in its share in the ultimate fruits of the reorganization, in respect to all of which things it has constituted itself the sole judge of the amounts it shall receive, and the interest it shall require in the equity of the property.

In carrying out its plan, it is claimed Commonwealth selected and is acting with a complaisant trustee; even, it is said, acting in collusion with the plaintiff trustee.

We are reluctant to believe that a reputable trust company

would be recreant in the performance of its obligations (*Ex Parte Equitable Trust Co.*, 231 Fed. 571, 593), for its legal duty to all the bondholders is clear, and it is bound to protect their interests in so far as it may or run the risk of being liable personally for any delinquency on its part. (*James* v. *Cowing*, 82 N. Y. 449; *DeBetz's Petition*, 9 Abb. N. C. 246, 252; *Nay Aug L. Co.* v. *Scranton Tr. Co.*, 240 Penn. St. 500.)

We make no determination, express no opinion, on the merit of the charges made; they will be considered by Special Term.

Reverting to what has gone before, we recall that certain bondholders have sought to intervene as defendants in this action (See 234 App. Div. 877), setting up as the basis therefor the disadvantages and unconscionable nature of the reorganization agreements as they view them. Other bondholders have interposed defenses to the same effect, which on motion have been struck out. These matters largely rested in discretion, for in the heretofore accepted strict sense they were no defense to the foreclosure action.

We indicated in an earlier decision (*Matter of Ranzal*, 235 App. Div. 796; affd., 259 N. Y. 632) that the court on the trial could in its discretion hear certain evidence bearing on the fraud or misconduct charged against Commonwealth, and these appellants were offered the opportunity to present such evidence as they had. We may say it was meagre; but they did produce the letter of Commonwealth to holders of bond certificates, dated April 4, 1931, the deposit agreement dated April 3, 1931, and the plan of refinancing submitted by it dated May 21, 1931. These documents bring to our attention the proposed plan to refinance and reorganize the premises under foreclosure in the event of their purchase at the foreclosure sale by the committee of majority bondholders. It appears, as we have said, that a substantial minority of holders of bonds do not assent to this reorganization plan and have challenged its fairness, charging that it is calculated to exclude them from a just participation in their security, and has for its purpose the promotion of selfish designs of the committee at the expense of the bondholders. As we have stated, these non-assenting bondholders seek to have considered the question of the fairness of the plan of refinancing sought to be imposed upon them.

This court may take judicial notice that in addition to the instant foreclosure suit there are pending two other foreclosures in which Commonwealth figures as a reorganization committee, following its promotion and sale, as in the instant case, of certificates of participation in the mortgages under foreclosure. In these two other foreclosures a plan of reorganization and refinancing similar in terms to the plan here in evidence also is challenged and criticized as

unfair to non-assenting certificate holders. This court also may take judicial notice that because of the economic conditions growing out of the world depression, outside competing bids are rare in foreclosure sales of properties where the mortgage is for a large sum; and that because of this absence of competition at the sale such foreclosure sales have become in many instances little more than a step in a plan of reorganization and refinancing of the mortgaged property, professedly in the interest of the bond or certificate holders.

The question before us now and to which we have given deliberate consideration is whether the court may and will act in such a situation. Over such reorganizations there resides in the court no direct power of approval or disapproval. But in the exercise of its equity jurisdiction the court may be alert to see that no injustice is done, not only to suitors, but to those somewhat remotely interested who are represented by a party before the court, be it by the plaintiff trustee, or be it by those represented by Commonwealth — albeit the latter in fact is not, though in effect it is, a party. " Courts have come to realize that such use of their jurisdiction and processes entails a correlative duty to those affected by the result." (*Guaranty Trust Co.* v. *Missouri Pac. R. Co.*, 238 Fed. 812, 815.)

The way is not unblazed if it be thought that we are pioneering in a new field. In the Federal jurisdiction it has been comparatively common for courts to take cognizance of reorganization plans in foreclosure and other suits, and to withhold judgment or confirmation of a sale until some fair and open plan of reorganization was presented and substantially agreed upon; and it has been said: " A court of equity's modes of relief are not fixed and rigid. It can mold its remedies to meet the conditions with which it has to deal." (*Graselli Chemical Co.* v. *Ætna Explosives Co.*, 252 Fed. 456, 459.) Also has it been said by WARD, C. J., in his dissenting opinion in the *Graselli Chemical Co. Case* (*supra*, at p. 464) that " When a court is selling the whole property of a corporation under a decree of foreclosure, with a view to distributing the proceeds of sale among the parties entitled, it may properly look into the fairness of any plan of reorganization under which the property has been purchased or is proposed to be purchased. In other words, the court will affirm the sale if the terms of the reorganization agreement are fair, and will refuse to do so if they are not. (See, also, *Central Trust Co.* v. *Chicago, R. I. & P. R. Co.*, 218 Fed. 336, 339; *Guaranty Trust Co.* v. *Missouri Pac. R. Co.*, *supra*.)

In this State, in the case of *DeBetz's Petition* (*supra*), there was a foreclosure of a mortgage on the Erie railroad which evidently had gone to judgment. There was a receiver of the property and

there was a plan for reorganization. Certain bondholders petitioned to intervene, alleging fraud, misconduct, collusion and overreaching. They were permitted to intervene to a limited extent after judgment; the sale was stayed and the grievances of the bondholders heard before a referee.

In the case under review, where it is charged that Commonwealth is likely to incur great expense and fix its own compensation at an extravagant figure in its efforts to carry out a plan of reorganization of doubtful merit and of challenged fairness, and is pressing for a sale where the bidder in all likelihood will be its dummy, we think a somewhat similar procedure should be followed. For these reasons the judgment should be vacated, so that no sale may occur until the bondholders have been heard concerning plans proposed and to be proposed as to reorganization. In light of conditions now prevailing, it is almost certain that there will be great loss to all the bondholders, and particularly to those who do not assent to the plan as managed by Commonwealth. The judgment should be reversed and the matter remitted to Special Term to withhold the entry of judgment decreeing a sale, and of confirmation thereof, until the grievances of the different bondholders can be heard and an opportunity afforded them to formulate a plan of reorganization of the mortgaged property which is fair and just, the acceptability of which will have been tested by the deliberate approval or disapproval of a substantial number of bondholders, leading, it is to be hoped, to an agreement by a large majority, if not by all. In taking cognizance of refinancing and reorganization plans, as much concern should be given to obstructive tactics of selfish minority interests as to the tyranny of oppressive majorities. The hearings which are directed may be conducted somewhat informally. Individuals as well as committees should be permitted to offer suggestions. The Special Term may permit them to intervene for any particular purpose or not, as seems to it expedient, taking evidence where it is thought necessary to preserve a record. In conducting the proceedings the court should exercise a wise and sometimes summary discretion. Bondholders who have no constructive plan and are merely captious or obstructive or have some selfish advantage to gain, should receive scant attention. If there are bondholders who wish to withdraw their bonds already deposited, they should be heard and terms fixed upon which such withdrawal may be made — having in mind that Commonwealth, in assuming its duties as a depository and committee, became a fiduciary of the bondholders and must act in good faith. If it should appear that Commonwealth is not acting in good faith and is not presenting a fair plan, and is pressing for a sale at which the bidder will be

its dummy, then the Special Term should consider fixing an initial or upset bid on the sale of the property, or authorizing the trustee to bid it in for the benefit of the bondholders. (*Central Trust Co.* v. *Washington County R. Co.*, 124 Fed. 813; *Nay Aug L. Co.* v. *Scranton Tr. Co., supra.*)

Since the foregoing was prepared, events have moved rapidly; the financial depression has entered upon a new stage; bank holidays have been declared; funds have been locked up; freedom of action is curtailed.

Due to these things further doubt is cast on the intrinsic merit of the sponsored plan, particularly wherein Commonwealth is to fix its own compensation, negotiate a prior lien loan, nominate and control the voting trustees.

These new conditions present new problems and furnish additional reasons for consultation and deliberation among those interested in the property in suit, and for the opportunity of a full hearing by the court.

The judgment should be reversed and vacated on the law and the facts and in the exercise of discretion for the reasons stated, without costs, and the matter remitted to Special Term to proceed therein as it may be advised and in accordance with the opinion. The order amending the answer to the amended complaint should be affirmed.

LAZANSKY, P. J., HAGARTY, CARSWELL and DAVIS, JJ., concur.

Judgment reversed and vacated on the law and the facts and in the exercise of discretion, without costs, for the reasons stated in opinion, and the matter remitted to Special Term to proceed therein as it may be advised and in accordance with the opinion. In view of the foregoing, the order amending the answer to the amended complaint is unanimously affirmed.