BANK OF MANHATTAN TRUST COMPANY, etc., Plaintiff, *v.* ELLDA CORPORATION and Others, Defendants.*

Supreme Court, New York County, April 4, 1933.

*O'Brien, Boardman, Conboy, Memhard & Early [J. V. Hewitt of counsel], for the plaintiff.*

*Rabenold & Scribner [L. G. Bernstein of counsel], for the defendant Commonwealth Bond Corporation.*

*Samuel Hershenstein [T. B. Eisenstein of counsel], for tne defendant May.*

*Wise, Shepard & Houghton [R. A. Newman of counsel], for intervening defendant Continental Bank and Trust Company of New York.*

SCHMUCK, J. In normal times the questions proposed would occasion little difficulty and would evoke instant response. But in this hour of grave economic distress a new element obtrudes itself, bringing forth a situation embarrassing not so much in the legalistic as from the practical aspect. While no system of jurisprudence has viewed with greater abhorrence, abrogation, direct or indirect, of contractual responsibility, and has more strenuously resisted interference with the natural intendment of the contract than the code of Anglo-Saxon, still the unprecedented situation now confronting the world has caused the law to seek to ameliorate obligations ordinarily unhesitatingly enforced, but which under existing conditions undeniably result in uncontemplated disaster if not destruction. In no phase of human endeavor is this more emphasized than in realty investments. Throughout the land the tribunals of the American commonwealths are straining to the utmost to alleviate the force and effect of bond and mortgage. Regardless of whether the property be rural or urban the courts are seeking to circumscribe the effect of foreclosure. In recognition of the change which has made security insecurity, and prosperity, indigence, the result usually following a foreclosure suit is now regarded askance and sought to be avoided. Although no pronouncement has yet been made banning litigation of this character, yet recent declarations warrant considerable limitation of what heretofore was deemed the inalienable right of a mortgagee. Particularly has equity exercised a somewhat dictatorial supervision and in many instances imposed conditions heretofore unthought of. In Wisconsin, the Supreme Court announced what to many must appear revolutionary and is yet unassailable in logic and justice,

namely, that deficiency judgments will not be allowed and fore-closure sales will be set aside unless it clearly appears that the proceedings are conducted under circumstances which establish not only that the mortgagor was protected in his equity of redemption, but that the sale indicated that normal bidding was had. (*Suring State Bank* v. *Giese*, N. Y. L. J. Mar. 7, 1933.*) The Appellate Division, Second Department, within the month has expressed a concordant view, adverting to language used in *Graselli Chemical Co.* v. *Ætna Explosives Co.* (252 Fed. 456): "A court of equity's modes of relief are not fixed and rigid. It can mould its remedies to meet the conditions with which it has to deal." (*Clinton Trust Co.* v. *142–144 Joralemon Street Corp.*, 237 App. Div. 789, 793.) In treating with a question akin to a certain phase of this litigation the appellate court held that when the whole property is disposed of under a decree of foreclosure, any plan of reorganization under which the property has been purchased or is proposed to be pur-chased is the subject of inquiry. In short, if the scheme is fair the sale will be affirmed; if otherwise, the sale will be set aside.

We, therefore, approach these suits for the foreclosure of the mortgage or deed of trust, and particularly the one for the removal of the Commonwealth Bond Corporation as committee and its substitution by a committee to be appointed by the court or selected by the bondholders in order that a fair plan of reorgani-zation may be adopted with a considerably enlarged conception of the duty imposed upon the court to see that justice is done to all who are even remotely interested. A *precis* of the evidence indi-cates that in 1925 the Ellda Corporation, in order to finance the construction of an apartment hotel on premises known as No. 56 East Fifty-fourth street, made a mortgage or deed of trust to the American Trust Company, plaintiff's predecessor, as trustee. The latter issued participation certificates in said bond and mortgage which the Commonwealth Bond Corporation underwrote and for the sale of which it acted as issuing agent. Before the completion of the structure in 1925 the Ellda Corporation leased the premises to Max Haering, who assigned his twenty-one-year lease to Elysee Company, Inc. As security and in accordance with the terms of the lease the Elysee delivered to the Ellda a chattel mortgage upon the furniture and furnishings of the hotel. Evil days came to the Elysee, and in 1927 it was dispossessed and the chattel mortgage was foreclosed. At the resultant sale the Ellda bought the furniture and furnishings. Within a fortnight after the sale the Ellda negotiated a lease of the premises to the L. E. C. Corporation and sold to it the furniture and property obtained at the sale. For security a chattel mortgage was given the Ellda by the L. E. C.

* —- Wis. —-; 246 N. W. 556.

Shortly thereafter plaintiff succeeded the American Trust Company as trustee.

The universal disturbance in economics did not neglect this venture, and in 1931 the Commonwealth, aware of the handwriting on the wall, sent forth to the participation certificate holders a distress signal and asked the deposit of certificates with the Harriman National Bank and Trust Company, succeeded by the Underwriters Trust Company, thus acquiescing in the Commonwealth's acting as a protective committee for them. True to this prophecy, some five months thereafter the plaintiff, as trustee, in pursuance of the powers vested in it by the trust mortgage, began its action to foreclose the mortgage. In the beginning the necessary parties consisted only of the Ellda, L. E. C. Corporation, the Commonwealth Bond Corporation, No. 70 East Seventy-seventh Street Co., Inc., and the State of New York. None of these seriously opposed the action, appearing only for the purpose of being informed of the progress of the proceedings. But before judgment could be perfected the situation grew complicated and necessitated not only amendment of the pleadings but also the bringing in of additional parties. The defendant May, not only suspicious but doubtful of the sincerity of the Commonwealth, as a certificate holder craved and was granted permission to be a party to the action. The Continental Bank and Trust Company, as holder of a chattel mortgage on the furnishings, made by the Commonwealth, which had become the owner thereof by virtue of a sale to it by the L. E. C., sought and was permitted to intervene, as having an interest which would be directly affected by any judgment obtained. For safety and in order to preclude any future assault on the title to be conveyed by the foreclosure, all the others were subsequently joined. Although independent in theory, yet ultimately closely allied in relief sought and because it also affected ownership, the Hartford action was consolidated with the foreclosure action in order that each and every individual, right or claim concerning the premises might be fully and adequately determined. The problem thus presented thus resolves itself into the following questions.

The paramount question is whether or not the furniture and furnishings claimed by the Commonwealth as owner and mortgaged to the Continental Bank and Trust Company, are covered by the trust mortgage now sought to be foreclosed. Of lesser importance, yet part of the issue, is the question of the successful operation of the hotel by the Commonwealth, for if profit was realized, the mortgagor may be entitled to the credit thereof. Another question, important only because of its effect upon the money aspect, is the value of the services rendered by the trustee and the allowances

to be made to the various counsel. Finally, and of considerable moment, is the relief sought by Lucy Hartford for herself and all other holders of participation certificates. If approval is extended to her protest, all proceedings must halt in both actions until an accounting is had regarding the Commonwealth as committee. It would, therefore, seem reasonable and logical to consider and determine the issue raised by this suit first and to leave the questions raised by the foreclosure action for final thought.

It is useless to deny or seek to minimize the seriousness of the incriminations made by the plaintiff Hartford against the Commonwealth. No matter how tolerant the view, the charge of fraud, incompetence, misrepresentation and betrayal of trust stands out clear. If any charges are established, the commiittee must be removed and the certificate holders directed to elect a substitute. A basis for the dissatisfaction of the certificate holders may well be discovered in the original plan of reorganization proposed by the Commonwealth. The objections raised against it not only by non-depositing, but likewise by depositing holders and the promptness with which the plan was changed, lend color to the indictment of self-seeking. But as that plan is not before the court, consideration can be given only to the amended or substituted plan now presented for judicial favor and which alone can be examined to determine the justness and practicability of the proposal to lift the venture out of the slough of misadventure.

Determined to aid the certificate holders if possible, a critical survey has been made of the new plan. Even when viewed with eyes prejudiced against the introduction of high finance in real estate no substantial fault can be found. Their original rights remain unimpaired. All that was gained by the investment was an interest in the mortgage. Under the proposed scheme this right is in no wise infringed. The stock of the corporation to be formed is to be allocated to the certificate holders subject to a voting trust to secure rational management of the hotel and to safeguard against interference by a self-willed and unreasonable minority. Furthermore, no certificate holder is jeopardized in his, her or its position. No compulsion is suggested to force them to accept or reject. They may at their election abide by their present position. If they deposited their certificates and the plan does not appeal, they may withdraw. If they did not deposit, no interference with their right is sought. In consequence a non-depositor cannot be heard to complain, for, not being a party, he is not bound thereby or interested therein. (*Thornton* v. *Wabash Ry. Co.*, 81 N. Y. 462.) If a depositor and dissatisfied, he can withdraw and thus become a non-depositor free to assert whatever right he originally

possessed.  As a non-participator he may not interfere with the others in any endeavor to salvage from complete wreckage.  An abundance of authority, particularly in the Federal courts, can be found for the proposition that a committee may be appointed and act for the best and most salutary interests of a majority of the bondholders.  And this right remains unqualified even though the committee be a corporation having independent interests under the agreement.  The objection that the committee does not measure up to the stature required by *Pyle* v. *Pyle* (137 App. Div. 568) and *Crummey* v. *Murray* (130 Misc. 378) is not well taken.  As we read the agreement, the committee is entirely at the service of the trust and is seeking in a conscientious manner to redeem a seemingly hopeless cause.  The objection that the Commonwealth Bond Corporation lacks capacity to act as committee because it is a foreign corporation of limited authority and possesses no power under its certificate to do business in New York to act as committee for participating certificate holders, is not well taken.  So far as this corporation is concerned the question is *stare decisis*.  In *Gifford* v. *Commonwealth Bond Corporation* (N. Y. L. J. Nov. 19, 1932) the same objection was raised.  *Nisi prius* dismissed the complaint and on appeal the ruling was unanimously upheld (237 App. Div. 871).

Despite the desire to stretch every principle of law to the utmost to protect and especially to preserve in these parlous and dark days of tribulation, the rights of the certificate holders for the reasons hereinbefore assigned, the complaint in *Hartford* v. *Commonwealth Bond Corporation* must be dismissed, but without costs.  The pleas of Peter Grimm and Herbert U. Silleck, who were permitted to intervene at the trial, are similarly disposed of.  We are now at liberty to discuss and determine the issues raised by the foreclosure action, for the issues raised by the *Hartford* case, while practically allied, are not pertinent to and cannot control the right of foreclosure.  From an inspection of the pleadings it is instantly apparent that plaintiff cannot be denied the relief sought, for a default was suffered in the payment of interest and principal and taxes were not paid when due.  According to the terms of the trust mortgage such contingency expressly empowered the trustee to foreclose.  In exact fulfillment of its duty the Bank of Manhattan Trust Company initiated these proceedings, and were it not for the controversy concerning the furnishings and the demand of the defendant May for an interpretation of the provisions of the mortgage regarding the same, unquestionably would have judgment of foreclosure and sale long since.  The construction of these provisions of the mortgage is the vital issue of this litigation and a careful consideration of them is necessitated.  They provide that " The

mortgagor does grant release and mortgage unto the Trustee * * * together with all appurtenant fixtures and articles of personal property now or hereafter attached to or used in connection with said premises. * * * The Mortgagor covenants that it will proceed with reasonable dispatch and * * * complete * * * the erection fully equipped on said premises of a fifteen story apartment hotel. * * * That the Mortgagor will * * * maintain and keep in good condition and repair * * * the fixtures and equipment therein * * * and will replace with fixtures and equipment equally as good such fixtures and equipment as may become worn out or destroyed." Undeniably comprehensive, yet subject to varying interpretation. The plaintiff and the defendant May assert that because of these provisions the chattel mortgage held by the Continental Bank and Trust Company must be subordinated to the trust mortgage. The defendants, principally Commonwealth and Continental Bank and Trust Company, contend that the chattels and personalty specified in the chattel mortgage are immune. The unmistakable antagonism between these litigants, the trustee and some of the certificate holders on the one hand and the Commonwealth and Continental Bank and Trust Company on the other, requires an exact admeasurement of these questions. Does this action include foreclosure of personal as well as of real property? Was the mortgage, granting its inclusion of personal property, properly recorded so as to bind all concerned on the theory of constructive notice? These primary questions propose subordinate questions which will be answered as they arise. After a study of the abundant authorities on the subject, to indulge in an exhaustive discussion of the question whether a mortgage of the character we are now considering covers personal property would warrant the charge of futile pedantry. After a reading of the more recent decisions such as *Cohen* v. *1165 Fulton Avenue Corp.* (251 N. Y. 24); *Central Chandelier Co.* v. *Irving Trust Co.* (259 id. 343); *Clinton Trust Co.* v. *142–144 Joralemon St. Corp.* (145 Misc. 475), and *Sherwin* v. *B. P. O. E.* (148 id. 452), no doubt can exist concerning the omnibus nature of a mortgage couched in such language as is being discussed. What personal property is to be deemed subject to the terms of the mortgage necessarily is dependent upon the intention of the parties as indicated by the language used. Attention, therefore, must be given to language used as it applies to the particular adventure. In the mortgage herein we discover the following language, " together with all appurtenant fixtures and articles of personal property now or hereafter attached to or used in connection with said premises; * * * will complete * * * fully equipped

on said premises of a fifteen story apartment hotel of fireproof construction; * * * will maintain and keep in good condition and repair * * * fixtures and equipment therein." As was held in *Central Chandelier Co.* v. *Irving Trust Co.* (*supra*), such a clause does not amount to a full and complete chattel mortgage but is limited to personal property found in the condition described in the mortgage. Without elaboration it is held that the mortgage in suit extends only to such chattels as are actually affixed or attached to or used in the operation of the building as distinguished from chattels employed in the special or particular business of the tenant in occupation. What this comprises the court does not now find it necessary to explicitly designate. So far as concerns the issue herein, *Diana Paper Co.* v. *Wheeler-Green Electric Co.* (228 App. Div. 577) settles the question of the validity of the after-acquired property clause so far as equity is concerned. That this is the accepted doctrine of law is attested in *Rosenthal* v. *269 W. 72d St. Corp.* (148 Misc. ——). While section 230 of the Lien Law defines the manner and method to be pursued in filing a chattel mortgage, section 231 of the same statute is the governing provision of law. The latter section clearly indicates that this mortgage was sufficiently recorded to bind not only the mortgagor but also subsequent purchasers from it as having constructive notice. (*Kribbs* v. *Alford,* 120 N. Y. 519.) From all this it follows that the mortgage herein is a valid lien on real and personal property or chattels as described in the instrument; that it affected after-acquired property and that it was properly recorded or filed so as to bind all here involved or interested. Finally, to remove all doubt as to the intent hereof it is decided that the provisions of this mortgage meant chattels and personal property do not cover the property mentioned in the chattel mortgage held by the Continental Bank and Trust Company, save as such property comes within the category specified in the document. We are now prepared to lend ear to the supplication for reward. The trustee asks for an allowance of $1,750, plus disbursements; its attorney requests $10,000 for services rendered, and the defendant May seeks $2,500 for counsel fees. Presumably we have what some may charge as an exaggerated view of the value of legal services. We know, and none can deny, that generally a lawyer not only materially abets his client's cause but gives what no other can give, the priceless assurance of rectitude of conduct. However difficult it may be, personal bias must not control in the distribution of another's property. Judicial determination of the value of professional services must be strictly kept within the limitations fixed by authority and depend upon the labor entailed, the difficulty

encountered, the proficiency of the craftsman, the result achieved and the value thereof to the one for whom rendered. Governed by these directions, desirous of dealing fairly with all, and influenced by a desire to lighten rather than to burden the already too much oppressed equity of redemption, it is held that the trustee receive $1,000 in addition to $630.27 allowed as disbursements and $168.32 due as fees as trustee. Keeping in mind the testimony of the expert whose qualifications are peculiarly unassailable that ordinarily $5,000 would be ample compensation in any foreclosure, although in this instance he rated counsel's services worth $10,000, the court grants $7,500 to counsel for the trustees. In endeavoring to fix the allowance of defendant May's counsel, some embarrassment is met. Much that was done was needless. A proper approach and proposal by the defendant would probably have been amicably and reasonably received. While justice is blind it can still hear, and rumors concerning the activities of minority certificate holders objecting for selfish reasons have grown disturbingly persistent. Though no ulterior or meretricious motive is charged against the said defendant, yet because the court deems much done by him to have been unnecessary and as a protest against needless litigation, despite the high opinion held of the forensic acumen of his counsel, he is awarded, not what he asks, but the sum of $1,500. The sole question remaining is whether profit was had by the Commonwealth in its operation of the hotel as committee for the certificate holders. Since counsel have given this no thought and as the evidence fails to prove illuminating, obviously at present the question is of little moment, so little as to negative the necessity for an accounting. As a final and complete adjudication, though no authority can be discovered for it except in the aforementioned quotation that equity is not fettered by gyves of precedent but may shape its course and mold its relief and remedies to meet the exigencies presented, it is ordered that no sale be had until reasonable assurance of normal competitive bidding unless the mortgagor or owner prove recalcitrant in aiding or abiding by whatever plan those interested in the res adopt as best available. In such case application may be made for leave to sell. Naturally if all interested desire immediate sale this direction will be disregarded. We are not unmindful of the rights of a mortgagee nor are we forgetful of the plight of the owner in these unbelievable hours of darkness. In ordinary circumstances no tolerance would be given to a plea delaying the mortgagee's right to foreclose and sell. But when conditions change and measures usually effectual and just become oppressive and destructive, the courts should be unafraid and fearlessly be the first to modify established precedent and the rigor

of the law in the cause of justice. Problematical harm may never outweigh real damage, especially when the damage is no less than total destruction. The lack of mortgage money or the unreasonable denial of consideration for what, since time immemorial, has been deemed the safest investment by those who heretofore clamored to loan on bond and mortgage has created a false situation spelling death to the owner of property so burdened. To us it seems inconceivable for the court to blind its eyes and deafen its ears to the calamity now existing in the field of real estate investments. To deny what always was granted as a matter of course may be bold, but it cannot be stigmatized as unjust or inhuman. After all, the respect for law and the confidence placed in the courts is based upon the belief that the law as administered by the courts seeks justice not implacable, but justice warm blooded and humane. If equity can mold its remedies to meet conditions as they arise, then equity should not fail in this emergency to hold the scales even and if need be wield the sword to defeat temporarily or destroy permanently uncontemplated yet actual destruction because of established legal form and procedure. Impressed with the distress of property owners and confident of its power to anticipate legislative relief this court of equity experiences no qualms and has no hesitancy in making the direction under discussion.

Submit findings and judgment accordingly.