63  403
74  868

## MARY HITCHLER ET AL. *v.* CITIZENS' BANK.

1. MORTGAGE. *Mortgagee left in possession of personal property. Without reservation of power of sale.*

   A mortgage on a tract of land and a saw-mill thereon, and also on "any and all logs, timber, wood, or other articles belonging to the mortgagor on or near the premises, whatever the number and amount may be, as well as any and all such logs and timber that may be hereafter obtained and had for the purpose of replacing or replenishing those now on hand that may be sawed into lumber, or otherwise used by the saw-mill of the mortgagor on said land or premises," is not rendered void on its face by the provision quoted, together with one which permits the mortgagor to remain in possession of the mort-gaged property, there being no express reservation by the mortgagor of the right to sell the logs or lumber. *Britton & Mayson et al.* v. *Criswell, ante* 394, cited.

2. SAME. *Creditors holding different securities. Right of one to attack the other. Case in judgment.*

   In 1869 D. borrowed a sum of money from from H. and F., minors, to be repaid when they arrived at majority. On the 2d of May, 1872, D. mortgaged his interest in a certain saw-mill to B. to secure a debt due to B., and which would fall due within thirty days thereafter. The condition of forfeiture in this mortgage was failure to pay the debt at maturity. At the foreclosure sale under this mortgage of B.'s, C. became the purchaser. On the 8th of May, 1872, D. executed another mortgage on the same property to H. and F. to secure the debt due them as above stated, and which would not then be due for several years. In a suit by H. and F., they now being of age, against C., to foreclose their mortgage, H. and F. cannot attack the mortgage in favor of B. because it permits the mortgagor to retain in his possession and use certain of the mortgaged property consumable in such use, since that mortgage did not contemplate that the property would be in the mortgagor's possession when the debt to H. and F. should mature.

3. SAME. *Agreement between mortgagee and purchaser under mortgage. Attacked by junior mortgagee.*

   And if in such case there was an agreement between B. and C., by which C. was to bid in the property and secure the amount so bid by a mortgage on

this and other property, though the original mortgage required that the sale thereunder should be for cash, H. and F. have no such interest as entitles them to attack the sale because of such agreement and of the fact that C. paid no cash on his purchase.

4. MORTGAGE. *Purchase of title under. Junior mortgagee a stranger.*
  After a valid sale under a senior mortgage, a junior mortgagee cannot, by a suit to foreclose his mortgage on the same property, compel one who claims to hold the title passed by such sale to appear and make proof thereof, the complainant being a stranger thereto.

APPEAL from the Chancery Court of Jackson County.
HON. SYLVANUS EVANS, Chancellor.

On the 2d of May, 1872, one W. C. Diggs executed a deed of trust on his undivided one-third interest in a certain piece of land and saw-mill and fixtures thereon, to one J. M. McGinnis, as trustee for J. W. Black, to secure a debt of twelve thousand dollars, due thirty days from the date of the deed to Black from Diggs. This deed of trust contained the following provisions amongst others : " The party of the first part hereby conveys  *  *  *  to the party of the second part  *  *  *  the undivided third part, share, and interest of the said party of the first part, and all his right, title, interest, possession, claim, and demand of every nature and kind whatever, in and to the following-described real and personal property, viz.: First, that certain tract or parcel of land situate, lying, and being in the county of Jackson, State of Mississippi, designated and described as all that tract of land lying between Dog River and Jerry Morton Lake  *  *  *  *  together with the buildings and improvements thereon and thereto attached, stock, cattle, oxen, sheep, etc., tenements, hereditaments, and appurtenances thereunto belonging, and the reversion, remainders, rents, issues, and profits thereof.  Also any and all logs, timber, wood, or other articles belonging to said party of the first part, on or near the aforesaid premises, whatever the number and amount may be, as well as any and all such logs and timber that may be hereafter obtained and had for the purpose of replacing or replenishing those now on hand, that may be sawed into lumber, or otherwise used by the saw-mill of said party of the first part on said land or

premises.  *  *  *  In trust, nevertheless, and upon the express condition that should the said party of the first part promptly take up and pay the aforesaid promissory note at its maturity, then this conveyance to be null and void and of no effect; but should the said party of the first part fail or refuse to pay said note at its maturity in principal and interest, or any part thereof, then the said party of the third part is hereby authorized, empowered, and instructed to sell the hereinbefore described part, share, and interest in and to the said property, real and personal, at public auction in front of said court-house of said County of Jackson, or on the premises, for cash, after having first given sixty days' notice in a newspaper, etc. *  *  *  *  It is further understood that until default be made in said payment, the said party of the first part shall remain in possession of said real and personal property, but after such default he shall deliver the same to the said party of the third *  *  *  *  *  ." On the 14th of August, 1872, the one-third interest of Diggs was sold under this deed of trust to Messrs. Borden & Elder, the parties who owned the remaining two-thirds interest in the same property, for five thousand and one dollars. It was agreed between Black, Borden, and Elder that the latter would give the former a deed of trust on the whole property for the amount of their bid. After the deed was delivered to them they refused to execute the deed of trust promised, and paid no money to McGinnis, the trustee. But this claim, together with other indebtedness of Borden and Elder to Black, was afterward compromised. On the 2d of November, 1872, Borden and Elder mortgaged this property to one Clark. On the 25th of January, 1882, Clark deeded it to De Smet and Elder, and on the 25th of July, 1882, Elder made a quit-claim deed to De Smet.

On the 8th day of May, 1872, W. C. Diggs executed a deed of trust on his undivided third interest in this same property to secure a debt of five thousand dollars to Wharton Frost and Mary Frost, now Mary Hitchler. This debt was for money received from Wharton and Mary Frost in 1869, and was not to fall due until they both reached majority, they then being small children.

De Smet filed a bill against Wharton Frost and Mary Hitchler, now arrived at majority, to have this last-mentioned deed of trust cancelled.

They answered, making their answer a cross-bill and praying that the property in question be subjected to their lien, on the ground that the deed of trust to McGinnis for the benefit of Black was fraudulent and without consideration, and was void on its face because "the said Diggs continued in possession of said property embraced in the deed of trust, converting trees into logs, logs into lumber, and selling the same in the usual course of business for his own benefit, until the same was taken into possession by Borden and Elder," and the sale under Black's deed of trust was void, because the property was not sold for cash, and no money was paid by Borden and Elder.

On appeal to this court the original bill was dismissed, and the cause remanded for a hearing on the cross-bill and answer thereto. De Smet having in the meantime died, the suit was revived against the Citizens' Bank, who claimed to be his assignee. On the hearing the Chancellor dismissed the cross-bill, and the complainants in the cross-bill appealed.

*Calhoon & Green,* for the appellants.

1. The sale by McGinnis, trustee, was not for cash, nor was it a public forced sale ; it was an agreed sale, *not* for the satisfaction of debts and whereby junior incumbrancers could realize excess over prior incumbrances, but an arrangement in fraud of the creditors and junior incumbrancers. 2 S. & M. 388. The power was to sell at public auction for cash ; a sale not in fact at public auction, nor for cash, was not in the "*mode, manner, and terms*" prescribed by the power, and was void. *Enochs* v. *Miller,* 60 Miss. 21 ; *Bonner* v. *Lessly,* 61 Miss. 397.

2. The McInnis deed of trust was *fraudulent on its face.* It conveyed real and personal property of this saw-mill, its logs, lumber, etc., and all to be acquired; conveys *possession* and the *rents, issues, and profits* of the business ; stipulates for possession in the grantor, with power of sale in him ; provides for interest to be paid after maturity. By this, this saw-mill business, its acquisitions, *rents,*

*issues, and profits,* and the *possession* thereof are granted, with stipulation that grantor is to *remain in possession, with power of sale.* *Hilliard* v. *Coyle,* 46 Miss. 309, 344; 59 Miss. 61; 58 Miss. 845; 56 Miss. 142.

The proof shows that Diggs was to and did continue in possession, selling as usual until sale by McInnis.

Notice of fraudulent character of McInnis' deed of trust is imputed to De Smet, for he claims through it.   Cases *supra.*

Having notice of its terms giving right of possession and sale, and yet granting *profits and possession,* he was put on inquiry as to what was done under these stipulations.   *Buck* v. *Paine,* 50 Miss. 648.

Being void as to personalty, void *in toto.*   56 Miss. 149; 59 Miss. 61.

Frosts acquired lien on property by mortgage on May 8, 1872, and sale was August 14, 1872, hence their lien was acquired before the scheme was consummated.

The Frosts were creditors on May 2, 1872, and as such the McInnis deed of trust was void as to them, and also as to any security they accepted for same on the property in the fraudulent deed of trust.

3. If sale under McInnis' trust deed is fraudulent in law or fact, De Smet acquired no title, and the trust-deed itself is barred; if not the purchasers could never become subrogated to Black's debt, because they paid nothing at said sale, and Black's debt was not paid thereby.   They are not equitable assignees of debt secured by deed of trust by appropriation of their funds to payment of mortgage debt; and if they were they could not assert it, because the McInnis deed of trust was the vehicle of the fraud.   *Letchford* v. *McLean,* 60 Miss.

*M. Green,* of counsel for the appellants, argued the case orally.

*C. H. Wood,* for the appellee.

1. The charge that the deed of trust was executed with intent to hinder, delay, or defraud Diggs' creditors we positively deny. No additional testimony was taken on the second hearing of the case in the court below, and this court treated both the complain-

ants' and defendant's charges on the ground of frauds as having failed by the proof as then made. And the testimony taken on the second hearing if anything established the validity of the deed of trust.

We grant that our deed of trust delays Diggs' creditors as a legal consequence, but not as a fraud or intention of fraud.

2. It does not matter what Black and Borden and Elder and Clark's transaction were, it cannot affect this deed of trust, nor can the complainants in the cross-bill complain of what Borden and Elder did to Black, or how Clark acted.

3. The burden of proof is upon the complainants to show that Diggs did convert trees and logs into lumber and apply them to his own use. They have failed to produce any proof to substantiate this charge, and it must fall to the ground.

Having, we think, met all the charges sought to avoid the deed of trust as presented by the pleading and proof in the record of both transcripts now before this court, we will notice the charges that seek to render the deed of trust void on its face.

It was contended by counsel in the court below that the clause in the deed of trust which gave a lien upon the logs, timber, wood, or other articles belonging to said mill, as well as any and all such logs and timber that may hereafter be obtained, and had for the purpose of replacing or replenishing those now on hand that may be sawed into lumber or otherwise by the said saw-mill, made the deed of trust void.

This nowhere gives Diggs the power to convert anything to his own use, nor is it shown there were any logs or trees to be converted. It signally fails on this point.

COOPER, C. J., delivered the opinion of the court.

The mortgage executed to secure the debt of Black is not void merely because it includes the sawlogs which from time to time might be brought on the mortgaged premises. There is no authority reserved by the deed to the mortgagor to sell these logs or the lumber into which they might be converted. It would not be a violent presumption to indulge that such was the understanding of the parties, but it does not unmistakably appear that it was,

and it is only where the reservation of such right is expressly reserved that the conveyance is to be declared void on its face. *Britton & Mayson* v. *Criswell, ante,* 394. It does not appear by the evidence that any of the mortgaged property was in fact sold by the mortagor, nor that there was any agreement in reference to it other than that appearing in the deed.

But it is manifest that the appellants could by no possibility have been injured or delayed in the collection of their debt by reason of this mortgage, for the mortgage by its terms was to become forfeited in thirty days from the date of its execution, while the debt due from Diggs to complainants arose from a loan of money made years before, and to be paid years after that time; so, whether the sawlogs were or were not included in the mortgage to secure Black, or whether they were or were not to be held by the mortgagor was immaterial to complainants, since in no event would they have been in the possession of the common debtor when their debt matured.

Complainants had no sort of interest in the arrangement made between Black, the mortgagee, and Borden and Elder, the purchasers under the sale made by the trustee McInnis, by which Borden and Elder were permitted to use in lieu of cash five thousand dollars of the money secured by the mortgage. Black himself might have appeared as a bidder at that sale and used the whole of his debt as cash in settling with the trustee, and what he might have done he could by contract permit Borden and Elder to do. We see nothing in the record to invalidate that sale, and by it, if valid, the lien of complainants' junior mortgage was destroyed. Borden and Elder having thus acquired a title superior to the mortgage of complainants, they are no longer interested or competent to controvert the title of the appellee, who claims to be the owner of the property through the title of Borden and Elder. If appellees are the assignees of that title by valid conveyances, they are entitled to protection because they are owners. But if they are not the holders of that title, they are protected in this suit because the complainants are strangers and cannot call on them to exhibit or defend their chain of title.

*The decree is affirmed.*