STANDARD LUMBER & MFG. CO. *et al. v.* DEPOSIT GUARANTY
BANK & TRUST CO.

(Division A.  Feb. 12, 1934.)

[152 So. 639.  No. 31050.]

Green, Green & Jackson, of Jackson, for appellants.

122

R. B. Ricketts and Barron C. Ricketts, both of Jackson, for appellee.

Howie & Howie, of Jackson, for appellee.

Argued orally by **Garner Green,** for appellant, and by **J. H. Howie** and **Barron C. Ricketts,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The Deposit Guaranty Bank & Trust Company exhibited its bill against the Standard Lumber & Manu-

facturing Company, J. A. Roell, and F. O. Cambre, which sought a reformation of a deed of trust executed by the lumber company in favor of the bank to secure a note; the note was indorsed by the two individuals, Roell and Cambre. The bill prayed for a decree of foreclosure and a sale of the manufacturing plant and property described in the deed of trust by a commissioner of the chancery court, making the deed of trust and the note exhibits to the bill. The note was long overdue, and the contract provided for foreclosure in the usual terms found in the average deed of trust, unnecessary here to detail.

The answer of the lumber company admitted the execution of the note, but denied that the amount due thereunder was twenty thousand twenty-one dollars and seventy-eight cents. It admitted that a description of certain real estate was a mistake, and alleged that the property was worth, in normal times, fifty thousand dollars, but that, due to the wide-spread acute depression, it would be impossible to sell the property for anything like its true value, and alleged that, if it was held for a period of time, it would return to normal value. The answer averred that it was the duty of the court of equity, on account of the existing world-wide depression, to fix an upset price, or make a postponement, or adopt any other equitable principle that would bring about a fair sale of the property.

Roell and Cambre, the indorsers of the lumber company's note to the bank, answered, admitting the allegations of the bill of complaint. Their answer set up that it was to the interest of all parties that the court enter a decree requiring the payment of the indebtedness due, that the plant and equipment of the lumber company had not been in use for a long time, and was rapidly deteriorating and falling into a state of waste, and that the plant was in need of expensive repairs to the end that its business of manufacturing lumber could be carried

on. It alleged that there were unpaid and accruing taxes, and unpaid and accruing interest on the indebtedness, and that the plant was not in operation and not producing any revenue, and that the liability was daily increasing, and the value of the property daily decreasing and deteriorating.

The lumber company made its answer a cross-bill, the effect of which was a plea for time, or for an upset price, or for the court to withhold a decree of foreclosure for some equitable reason due to the depression.

Much of the evidence was devoted to the former value of the plant in the years prior to 1929, and opinions as to the value of the property, and that it could now be replaced at much less cost. The opinions of witnesses as to the value the court should put upon the property varied from thirteen thousand five hundred dollars to in excess of thirty thousand dollars. During the progress of the trial, the lumber company made a motion that the Pelahatchie Lumber Company be made a party defendant; that the Pelahatchie Lumber Company had obtained a judgment during the progress of the suit for a considerable sum, and was therefore interested in appellant's property. It was shown that the taxes and insurance were accruing, and were not being paid; that interest was being increased, and consequently the indorsers' liability was increasing.

In accordance with the request of appellant lumber company, the court fixed an upset price; and on the evidence fixed fourteen thousand dollars as the minimum sale value of the property; corrected the description of the land in the deed of trust, admittedly incorrect therein; rendered a decree against the lumber company and the indorsers for the amount of the debt, interest, and attorney's fees, and required prompt payment, or, in default of payment of the indebtedness, a foreclosure of the deed of trust by a named commissioner at public sale,

in the manner prescribed by law, and fixed the date of the hearing of confirmation of the report of sale as of the 31st day of July, 1933; this decree was entered on June 28, 1933. Thereafter the commissioner, in so far as is argued to us, complied with the terms of the decree and sold the property to J. A. Roell for the sum of fourteen thousand dollars, and made report thereof to the court. There were no exceptions filed to this report, and on the date fixed by the court for the confirmation, the 31st day of July, 1933, the court found that the property brought a fair and reasonable price, and confirmed and approved the sale.

The method of sales of lands by the chancery court in this state is to be found in sections 457 to 466, inclusive, Code 1930. The last section specifically authorizes the court, upon the confirmation of a report of sale of any property, to render a deficiency judgment.

1. We are of opinion that there is no merit in the objection urged here that the court, by its decree ordering a correction of the description of the land in the deed of trust eliminated from the deed of trust the description of other property. Nor do we think the deed of trust is void because there was included therein the material on hand. Hitchler v. Citizens' Bank, 63 Miss. 403. There was no sort of reservation in the deed of trust by the grantee as to disposing of the material on hand in the course of business.

2. Appellants strenuously urge here that the upset price, which the court fixed in the decree ordering the sale, was not adequate, and that the court erred in fixing fourteen thousand dollars, but assert that there should have been a much higher upset price fixed upon the property, and that the court should not have confirmed the sale, but should have held in abeyance a decree of confirmation thereof until some later day when a normal condition would enable the sale of the property

at what it conceived to be a fair and adequate value thereof, and cite a great many cases, most of which are constructions of statutes passed by the Legislatures of a number of states granting a stay for a limited period of time owing to the world-wide depression, the details of which we need not here set forth. Appellants cite the case of Home Building & Loan Association v. Blaisdell, 54 S. Ct. 231, 78 L. Ed. —, in which the Supreme Court of the United States upheld the constitutionality of a statute extending the period of redemption as to foreclosure of mortgages to May 1, 1935, provided the mortgagor, allowed to remain in possession of the property, devotes a reasonable part of the income or rental value for the payment of taxes, insurance, and interest, the terms of said payments to be fixed by the trial court.

The inapplicability of the Minnesota statute and the decision of the court in the above case is obvious. In the first place, the showing here was that the property was rapidly deteriorating in value; that it had not been in operation for eighteen months; that taxes and insurance were accruing, no interest was being paid; that no watchman was provided for the plant, and that the liability of the indorsers on the note secured by the deed of trust was being increased; and there was no showing that the bank or any of the parties could operate the plant so as to obviate these continuing losses. We are not called on to say what would be the position of this court with reference to a statute similar to that in force in Minnesota and other states, because, at this time, we have no such statute.

Whatever may be said further about the inadequacy of price in this case and the upset price fixed by the court is answered by the simple statement that there is evidence that the amount fixed by the court was reasonable, and we cannot say that it was manifestly error in that respect. Let it be remembered that an upset price was

fixed by the court at the instance of the appellants. The complaint is to the amount thereof.

There are two cases cited by appellants in which the question presented to the court was the action of the lower court in refusing to confirm sales and imposing conditions upon the mortgagee seeking to foreclose without legislative authority. These cases are Michigan Trust Co. v. Cody, 264 Mich. 258, 249 N. W. 844, and Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556, 85 A. L. R. 1477. An entirely different case is presented on the facts here, clearly distinguishing this case from those cases, if we were inclined to followed them in the absence of any statutory authority, the conclusions reached in those cases are wholly at war with the statutes and decisions of this court. The statutes invest the chancellor with discretion as to confirming sales of land, and we cannot disturb a finding of fact of the chancellor, unless we could say, and point out with certainty, that it was manifestly wrong under the controlling fixed decisions of this court.

In Newman v. Meek, Freem. Ch. 441, the court held: "Mere inadequacy of price is not sufficient to set aside a contract, unless it is so gross as to furnish evidence of fraud. There must be an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it." In the case of Weyburn v. Watkins, 90 Miss. 728, 44 So. 145, 146, wherein the validity of a trustee's sale was in question on the ground of inadequacy of price, the land was sold for about forty per cent. of its actual value, and the court declared: "It is settled law, however, in this state, that a sale of land made by a trustee, otherwise valid, will not be set aside for mere inadequacy of price, unless the inadequacy is such as to shock the conscience. While the sale of this land was for less than its actual value, we would be unwilling to dis-

turb the sale on that account." To the same effect is Mississippi Chancery Practice (Griffith), section 657, citing the case of Swofford v. Garmon, 51 Miss. 348.

The conclusions we have reached, that the court properly found that the sale was for a fair and reasonable price when made, and that a resale would not result in a higher price, are sustained by the cases of Federal Land Bank v. Vineyard (Ark.), 63 S. W. (2d) 840; Lincoln Safety Deposit Company v. Carlson (Neb.), 250 N. W. 236; Bothwell v. Godfrey, 114 N. J. Eq. 45, 168 A. 287; and Bolich v. Prudential Ins. Co., 202 N. C. 789, 164 S. E. 335. 82 A. L. R. 974, and we cannot set up an emergency because of financial depression alone to hinder and delay the appellee in his legal and contractual rights.

There was no fraud in this case, and no other circumtances of unfairness on which we might seize to aid an impecunious and unfortunate debtor in the delay of the foreclosure of his mortgage by the terms of the contract, and we are persuaded that it is better for us to adhere to the fixed rules firmly imbedded in the decisions of our court during its entire history. The fact that the property might sell for much more at a later, indefinite period will not afford ground in equity for setting aside the sale here in question. Equity does not violate the law nor treat valid contracts as scraps of paper, nor raise a shield to accomplish that end; if it did, in times such as we now confront, its halls would be overcrowded and statesmen would not need to wrestle with its problems.

The depression plea in this case, if entertained by a decree of the court, would be pure speculation and gambling without reasonable hope, on the facts herein, of accomplishing any substantial benefit to the lumber company, and would be fraught with considerable risk and gamble in so far as the bank and the indorsers of the lumber company's note are concerned. We are of opinion that the upset price in this case fixed at the instance of

the lumber company operated to secure for it a higher bid than would otherwise have been obtained. The power of the court to fix an upset price cannot be here inquired into because it was one of the alternatives sought by the appellants. We cannot disturb the decree of the court below.

Affirmed.