THE FARMERS AND MECHANICS SAVINGS BANK OF THE CITY OF LOCKPORT, Plaintiff, *v.* THE EAGLE BUILDING COMPANY and Others, Defendants.

Supreme Court, Chautauqua County, April 24, 1934.

---

* *Rosen* v. *Murray*, 240 App. Div. 955.

*Storrs & Storrs*, for the plaintiff.

*Ernest Cawcroft*, in person, and for the Eagle Building Company.

*R. Stanley Turnquist*, for Jamestown Aerie No. 816, Fraternal Order of Eagles, and others.

*Jackson & Durkin* [*John F. Durkin* of counsel], for the Bank of Jamestown.

*Carlson & Alessi* [*Samuei C. Alessi* of counsel], for Schofield Tordoff.

*James A. Hughes*, for Charles C. Haas.

NOONAN, J.   This is an action for the foreclosure of a mortgage held by the plaintiff upon certain property in the city of Jamestown, Chautauqua county, N. Y., owned by Arvid N. Lundquist, Charles A. Anderson and Fred R. Hemphill, as trustees of Jamestown Aerie No. 816, Fraternal Order of Eagles.   Among the parties defendant are certain individuals who entered into an agreement whereby they undertook to and did agree, in consideration of the making of the loan secured by the mortgage, that in the event of foreclosure and sale of the premises and a deficiency, they and each of them would pay to the plaintiff, its successors or assigns, the amount of such deficiency.   The Bank of Jamestown is made a party defendant as holder of a chattel mortgage upon certain personal property which plaintiff claims is included within the description of the property mortgaged to it.

The guarantors moved for a dismissal of the complaint as against them, upon grounds not necessary to be here stated, and by agreement the question of the liability of the guarantors for any deficiency upon the sale has been postponed until it shall be determined whether such a deficiency will arise, and that question will not be further considered herein.

The Bank of Jamestown interposed an answer denying that the lien of its chattel mortgage is subordinate and inferior to the lien of the plaintiff's mortgage and setting up as a defense that the property covered by the chattel mortgage was not in existence at the time of the execution of the plaintiff's mortgage and that the plaintiff's mortgage does not cover that property and that defendants' claim to the property is superior to that of the plaintiff.

The case was brought on for trial and evidence introduced tending to support the allegations of the complaint as to the giving

of the mortgage and the amount due thereunder, and also as to the making of the guaranty agreement and the execution, delivery and filing of the chattel mortgage held by the Bank of Jamestown.

The guarantors introduced evidence tending to show that the value of the property covered by the plaintiff's mortgage is far in excess of the amount due thereon, and at the conclusion of the evidence made a motion that the court fix an upset price of $25,000 to be paid for the property upon the sale. The plaintiff also asked for an additional allowance under section 1513 of the Civil Practice Act, claiming the full five per cent permissible under the second subdivision of that section.

It thus appears that there are three questions upon which the court is asked to rule, which are:

1. Whether the chattel mortgage held by the Bank of Jamestown is superior or inferior to the plaintiff's mortgage in respect of the property covered by the chattel mortgage;

2. Whether the court has the power to fix an upset price to be bid upon the sale of the mortgaged property, and if so whether it should exercise that power and what amount should be fixed, and

3. Whether the plaintiff should be granted an allowance additional to costs.

The description of the mortgaged property in the plaintiff's mortgage, after describing the parcel of real estate upon which the building is situated, proceeds as follows: "Together with all the buildings and structures, with their equipment, and all fixtures and articles attached to or used in connection with said premises, and all plumbing, piping, heating and lighting apparatus and appliances, now or hereafter erected or placed on said premises or used in connection therewith, and which for the purposes of this mortgage are and are to be deemed as part of the realty and covered by this mortgage." The description contained in the chattel mortgage held by the defendant Bank of Jamestown is as follows: "All of the furniture, utensils, chattels, machinery, tools and equipment on the lands and within the structure designated as the Eagle Temple, situate on the easterly side of Washington Street, Jamestown, New York, but subject, firstly to the prior lien of the mortgage of the Farmers & Mechanics Savings Bank of Lockport, New York, and secondly, to the prior lien of O. Nelson Rushworth, as Trustee, under a certain mortgage delivered to him by the Eagle Building Company."

It is impossible from anything which is before the court to determine whether the descriptions above set forth overlap so as to cover the same property wholly or in part, and the court is in no position to determine the question of priority at this time

upon the evidence before it. It is elementary that a foreclosure action is not the proper proceeding to try title paramount to the mortgage and this court should not, therefore, in this action assume to determine whether the property covered by the chattel mortgage is subject to the lien of the plaintiff's mortgage. There are other appropriate methods by which that question can be decided.

So far as this question is concerned, I am of the opinion that the plaintiff is entitled to judgment of foreclosure and sale of the property described in the mortgage which it holds, that the sale should be a sale of that property according to the description contained in the mortgage and if a purchaser shall attempt to take possession of any property not included within that description or not subject to the lien of that mortgage, but which is subject to the lien of the chattel mortgage, the owner of the latter will doubtless have a complete remedy against such purchaser.

Coming now to the motion of the guarantors that the court fix a price for the property below which it will refuse confirmation of the sale, a rather difficult question is presented. In the first place, I would call attention to the recent act of the Legislature, being chapter 794 of the Laws of 1933, passed at the extraordinary session of that year and which became a law August 28, 1933, which prohibits the granting of any deficiency judgment during an emergency which is declared to exist until July 1, 1934, except upon application to the court on notice to the parties against whom the judgment is sought and upon a determination by the court as to the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value, and the deficiency judgment may not exceed the difference between the value as determined by the court and the amount due upon the mortgage.

The method of relieving mortgaged debtors against the market conditions brought about by the emergency is, in my view, a clumsy one and under some circumstances would operate in an unconstitutional manner, for if the plaintiff should allow the property to be sold to a third person for less than the amount due upon the mortgage, relying upon a deficiency judgment to obtain the balance of his debt, and if the court should refuse to allow him judgment for all of such balance, the result is suspiciously like depriving him of property without due process of law. This situation would be obviated if the mortgagee should be advised in advance of the sale what sum is necessary to be bid in order that he may expect a confirmation, as he will then be able to protect himself up to the fair value of the property, as fixed by the court, by bidding up to that sum, for he will then be able to obtain a deficiency judg-

ment for the remainder and will secure either the sum bid if a third party purchases or the property at its fair value.

This reasoning sufficiently shows the desirability of determining a fair value for the property before the sale and is reinforced by the consideration that if the court should deem the amount bid inadequate without fixing in advance the amount which it would consider adequate, there might be a succession of sales, each of which would be set aside for inadequacy of price with the result that the plaintiff's remedy might be delayed to an extent which would at least partially deprive it of effectiveness.

The evils which have developed in connection with the entry of deficiency judgments under existing conditions are so well known that they are a subject of judicial notice. The decline of real estate values since 1929, the increase in the value of money, the stagnation of the real estate market, the recent banking crisis and the general falling off in business activity are likewise too well known to require that evidence of them be produced in order that the court may act in the light of knowledge of those circumstances. The result is that there is no normal competitive bidding upon foreclosure sales. A mortgagee, until the passing of the act of the Legislature above cited, was able to buy in the mortgaged property at any figure he chose and to secure a deficiency judgment for the remainder of the sum due, irrespective of what the fair value of the mortgaged property might be under normal conditions.

There is, in this State, no statutory authority under which the court can fix an upset price for the sale in advance thereof, and, if the power exists, it must be based upon the inherent equitable power of the court. The plaintiff is invoking the aid of the court and may be required as a condition of receiving that aid to act equitably itself. The situation now being passed upon is not in all respects novel though the application of the principles involved is so to some extent. That a court of equity has inherent power to refuse to confirm or to vacate a sale if the property is sold for a substantially inadequate sum cannot be doubted.

Under the English practice before 1867, it was common upon application for confirmation of a sale to accept increased bids, and the same practice has been followed to some extent in the case of sales of bankrupt property under the bankruptcy laws. The English practice was abolished by statute in the year mentioned for the reason that it resulted in transferring the bidding to the court room from the place of sale. In this country the practice has been not to refuse confirmation merely on account of inadequacy of the price bid. (*March* v. *Ludlum*, 3 Sandf. Ch. 35; 8 A. L. R. 1001.) The rule seems to have been that either the price must

be so inadequate as to shock the conscience of the court, or there must be some element of fraud or collusion in the bidding; otherwise the court would not set aside the sale.

This practice is reasonable under normal conditions, but is not to be regarded as a declaration that the court has no power, under abnormal conditions, to compel a mortgagee seeking its aid, and who acquires the mortgaged property, to credit a fair value of that property upon a mortgage debt and to accomplish that result by its control of the judicial sale of the property. In my opinion, a court of equity has the inherent power to accomplish this result and to effectuate it by determining the fair value of the property in advance of the sale where existing economic conditions are such as to require such a determination in furtherance of justice and equitable dealing.

There is no doubt in my mind that the court has the power to set aside a sale merely upon the ground that the price bid is inadequate and to order a resale if general market and economic conditions are such as to warrant the exercise of the power. To fix a price in advance of the sale is merely a convenient and appropriate method of advising the parties of what will be necessary in order that the sale shall meet with the approval of the court and follows as a corollary from the power to vacate the sale for inadequacy. That the court has the power to fix an upset price has already been declared. Its chief use heretofore has been in the case of corporate reorganizations where the power has been invoked to protect the rights of minority security holders, but it has also been used to prevent the obtaining of excessive deficiency judgments to the prejudice of junior incumbrancers and creditors.

It was held in *McClintic-Marshall Co.* v. *Scandinavian-American Building Co.* (296 Fed. 601) that the right of a mortgagee on condition broken to foreclose and have the property sold to the highest bidder and the proceeds applied to his debt, is not an unqualified right and that under appropriate circumstances the court might fix a price below which the property should not be sold, and the court in that case accordingly made a decree fixing an upset price for the protection of others than the mortgagee. The reason advanced for fixing an upset price in case of corporate reorganizations is that the magnitude of the interests involved and the specialized character of the property would make it impossible to secure bidders who would offer a fair price except through some combination of capital intending to effect a reorganization, and that such a combination should not be permitted to take advantage of its position and buy without competition to the prejudice of other interests.

The same reasoning applies with equal force to a situation such as that created by present market conditions in which there is no prospect of bidders ready and willing to offer an adequate price, other than the owner of the mortgage debt, who should not be permitted to take an unconscionable advantage of his position. That it is within the inherent power of the court to compel the doing of equity by a mortgagee is the basis of the decision in *Suring State Bank* v. *Giese* (210 Wis. 489; 246 N. W. 556), where the Supreme Court of Wisconsin held that the absence of competitive bidding at a foreclosure sale justified a refusal of confirmation unless the mortgagee agreed to credit the fair value of the property upon his judgment. In that case the fair value of the property was found to be the amount due under the judgment of foreclosure, so that the result was to require the mortgagee to waive a deficiency.

I conclude that the question is not so much as to the inherent power of the court as to the circumstances under which it may be exercised and that the specialized nature of the property involved in this suit and existing economic conditions concur in bringing about a situation where the court is called upon to exercise its power. The evidence produced by the guarantors warrants fixing an upset price of $25,000, which is the amount suggested by them. This conclusion is supported by the decisions in *Central Trust Co. of New York* v. *Washington County R. Co.* (124 Fed. 813); *Clinton Trust Co.* v. *142–144 Joralemon Street Corp.* (237 App. Div. 789); *Bank of Manhattan Trust Co.* v. *Ellda Corp.* (147 Misc. 374).

Upon the plaintiff's application for an additional allowance the construction of section 1513 of the Civil Practice Act is involved. This section was carried over from section 3253 of the Code of Civil Procedure, which was amended in 1898 so as to provide that in any action or special proceeding specified in the section where a defense has been interposed, a sum not exceeding five per cent upon the sum recovered or claimed or the value of the subject-matter involved may be allowed by the court in its discretion. There are a number of cases in which it has been held that the effect of this amendment was to permit an additional allowance in mortgage foreclosures in excess of the limit of $200 specified in subdivision 1 of the section under consideration.

It is to be noted that the actions and proceedings specified in the section are an action to foreclose a mortgage upon real property, an action for the partition of real property, a difficult and extraordinary case where a defense has been interposed in an action, and a special proceeding by certiorari to review an assessment under article 13 of the Tax Law. It is not, therefore,

necessary that the case be difficult and extraordinary to authorize the court to grant an additional allowance if the case is of any of the other descriptions specified. The language of subdivision 2 would seem upon its face to permit the court to grant an allowance in a mortgage foreclosure, where a defense is interposed, in excess of $200. The Court of Appeals in *Osinoff* v. *Gert Realty Corp.* (260 N. Y. 36), which was a foreclosure action, held that the amount of such an allowance under this section is limited to $200. In that case, although there was litigation over the amount due under the mortgage, yet no answer was interposed so that the case was not within the terms of subdivision 2 of section 1513.

My conclusions are:

1. The plaintiff is entitled to judgment of foreclosure and sale of the property described in the complaint, and that the amount due the plaintiff on said mortgage to date, April 24, 1934, is $30,000 principal and $2,225 interest; and the plaintiff is entitled to recover $171 paid for insurance premiums and interest on same from December 8, 1933, and also to recover $53.75, paid for plumbing, with interest from December 1, 1933.

2. The question as to whether any or all of the property described in the chattel mortgage held by the defendant The Bank of Jamestown is subject to the plaintiff's mortgage is not before the court and no determination is made with respect thereto at this time.

3. That the court has the power to fix the price in advance of the sale below which it will refuse confirmation, and that price is fixed at the sum of $25,000 as prayed for by the guarantors.

4. The plaintiff is awarded an allowance additional to costs under Civil Practice Act, section 1513, subdivision 2, of $500.

Submit judgment of foreclosure and sale in accordance with this opinion.