## MANHATTAN RY. CO. et al. v. CENTRAL HANOVER BANK & TRUST CO.

## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

### Nos. 147, 148.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

Wright, Gordon, Zachry & Parlin, of New York City (Boykin C. Wright, Clifton Murphy, and Daniel James, all of New York City, of counsel), for Van S. Merle-Smith et al., as a Protective Committee for Manhattan Ry. Co. Mortgage Bonds.

Charles Franklin, of New York City (C. Frank Reavis and Martin D. Jacobs, both of New York City, of counsel), for Manhattan Ry. Co.

Elon S. Hobbs, of New York City, for an Elected Committee of the Manhattan Shareholders and other Security Holders of the Manhattan Elevated and the Interborough Transit Company.

Solomon G. Salomon, per se.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a final decree of the District Court for the Southern District of New York in an action for the foreclosure of a mortgage on property of the Manhattan Railway Company including an order for the separate sale of a portion of such property known as the Sixth Avenue Line; and also from an interlocutory order entered June 28, 1938, approving a program for the sale of a part of the mortgaged property. The appeal from the interlocutory order raises no issues not inherent in the appeal from the final decree.

The Manhattan Railway Company is a New York corporation which owns an elevated street railway system in the City of New York consisting of what are known as the Second, Third, Sixth and Ninth

Avenue lines together with a power house, storage yards, cars and necessary equipment, franchises and facilities for operation.

Its principal properties are subject to the mortgage foreclosed in this action which was executed in 1890 to the Central Hanover Bank and Trust Company, as trustee, and is known as the Consolidated Mortgage which secures bonds issued and outstanding in the hands of the public to the principal amount of $40,670,000. At the time the proceedings to foreclose were begun, and ever since, the mortgage has been in default because of overdue and unpaid interest and taxes.

In 1903 the Manhattan Company leased all of its property and franchises to the Interborough Rapid Transit Company, a New York corporation, for the term of 999 years from November 1, 1875. This lease was in all respects subordinate to the terms of the mortgage; it being expressly provided that the "franchises, rights and property so leased and demised are taken by the Lessee subject to the various burdens and conditions under which they are respectively held by the Lessor". The lessor and lessee have both been in the hands of equity receivers since 1932 and the disaffirmance of this lease was authorized by order of the District Court filed July 5, 1938 which order is now pending on separate appeal here. At all times since the lease went into effect the lessor or its receiver has operated the Manhattan system in connection with that owned or otherwise leased by the Interborough. The claim is made that the Interborough is both responsible and liable for the defaults which have occurred under the mortgage but we are not presently concerned with the controversy between the lessor and lessee in that regard since the right to foreclose in this action is plain enough. We have already refused to stay the sale and we now confine ourselves to the issues raised on this appeal. They follow from the terms of the order for sale which provided that what is known as the Sixth Avenue Line, and only that part of the mortgaged property, should be sold and fixed as the upset price on the sale the sum of $12,500,000.

The bill of complaint in this action to foreclose the mortgage was filed March 16, 1934 in accordance with leave granted by the court in the receivership action; was duly answered and issue joined. A special master was appointed on February 20, 1935 who held hearings and filed his report establishing the fact of default to which no exceptions were taken. On March 29, 1938, the City of New York advertised for sale tax liens on the mortgagor's properties which were in arrears as of November 30, 1937 and, all efforts to stay the sale having failed, bid in such liens to the amount of $8,061,317 itself at the sale on June 30, 1938. Interest on them has since been accruing at the rate of 12% or nearly $2,700 per day. Meanwhile, on April 8, 1936 the mortgage trustee amended its foreclosure complaint by adding additional parties and alleging additional defaults.

The above mentioned action of the City of New York has made it a purchaser of tax liens which, under the provisions of the Administrative Code, clearly makes the purchased liens mature in three years after the date of the sale. Moreover, under Sec. 415(1)–36.0 of the Code, the maturity date may be accelerated unless current taxes and semi-annual interest on the tax liens are paid. Consequently, a large payment will have to be made in December of this year and other large payments in the first months of 1939. In order to forestall the right of acceleration and its attendant right of early foreclosure, over one million dollars will have to be paid before the end of next January. To clear the property of tax liens to which the foreclosed mortgage will be subordinate if the three year period is allowed to run, over $15,000,000 must be paid during that time.

Faced with this situation, a protective committee of Manhattan bondholders, consisting of Van S. Merle-Smith and others, made arrangements with the City of New York for the purchase by the City of what is known as the Sixth Avenue Line for $12,500,000 and for the payment of all taxes in arrears out of the proceeds. This would do away with the danger from tax lien enforcement and leave a balance over provided the sale was made as arranged. In April, 1938, the committee filed its petition setting forth its proposals and after hearings at which the program was opposed by the mortgagor and the representatives of some bondholders and the value of the Sixth Avenue Line was made an issue concerning which a great deal of evidence was introduced, the court made an interlocutory order on June 28, 1938

approving the proposal to sell. The appeal from this order is the one which must stand or fall with the principal appeal from the foreclosure decree. That decree was entered on August 8, 1938 after a petition for instructions had been filed by the mortgage trustee and the court had directed that it proceed to take steps to secure the decree providing for the proposed sale.

The various assignments of errors may be treated under two main heads for they combine to raise (1) the question whether the Sixth Avenue Line may lawfully be sold in foreclosure without the sale of the remainder of the mortgaged property also; and (2) whether there was error in fixing the sum of $12,500,000 as the upset price at the sale.

■ In respect to the power to direct the sale of only a part of the mortgaged property the court below was right. There was, indeed, a provision in the mortgage providing that if the trustee should sell the property without suit to foreclose it should be sold as a whole but no such limitation was made as to a sale under a foreclosure decree. Accordingly, we need now make no broader decision on this phase of the appeal than that in the absence of such a restriction, the court had the power to enter a decree of foreclosure directing the sale of a part of the mortgaged property. See Low v. Blackford, 4 Cir., 87 F. 392. Moreover, Sec. 1086 of the New York Civil Practice Act, which is substantially the same as the provisions of Throop's Code of Civil Procedure of 1889 which was in force when the foreclosed mortgage was executed, expressly provides that:— "Where the mortgage debt is not all due, and the mortgaged property is so circumstanced that it can be sold in parcels without injury to the interests of the parties, the final judgment must direct that no more of the property be sold in the first place than is sufficient to satisfy the sum then due, with the costs of the action and expenses of the sale; * * *".

■ The part of the mortgaged property ordered sold being sufficient to satisfy, at the upset price, the defaults which had accrued under the mortgage together with costs of the action and expenses of the sale, the remaining consideration on this point is whether the sale was of property in such circumstances that its separate sale could be made with due regard for the rights of all parties in interest.

It is manifestly for the best interests of all concerned that the mortgage foreclosure be terminated by satisfying existing defaults and that can only be done, the obligations of the lessee to the lessor, whatever they may be, being no bar to this action, by selling all or part of the mortgaged property. Granted that unless conditions change, the Manhattan system will be more valuable if it can be operated as a whole and that the Sixth Avenue Line has proved to be the most profitable part of it in the past, the fact remains that conditions are going to change and that a fair opportunity to make a sale of the whole is but problematical while a chance to sell the Sixth Avenue Line alone is at hand. Having of necessity to make a choice between the sale of what would wipe out the tax defaults and leave a large amount of property for other purposes and the uncertainty as to the result of an attempt to sell all the mortgaged property at whatever sacrifice that might entail, we have no doubt whatever that the court below chose wisely and for the best interests of all parties in ordering the sale of what was readily saleable at the time and would inevitably depreciate in value because of changing circumstances which would subject it to severe competition in about two years.

At the end of that period it is expected that the new Sixth Avenue subway being built by the City of New York will be completed. That subway will run part of the way, from 4th Street to 53rd Street, directly under the location of the Sixth Avenue Line of the Manhattan Company. Its competition would certainly adversely affect the operating revenue of the elevated line ordered sold and with that its value would decrease.

■ The fixing of any upset price was discretionary. Bethlehem Steel Co. v. International Combustion Engineering Corp., 2 Cir., 68 F.2d 952. As a matter of law it established nothing except to give notice to prospective purchasers that lesser bids would not be entertained. The question of adequacy of price remains for consideration after sale and on motion to confirm. Guaranty Trust Co. of New York v. Chicago, M. & St. Paul Ry. Co., D.C., 15 F.2d 434. Furthermore, this upset price was fixed after adequate hearings and upon conflicting testimony a preponderance of which established its fairness conclusively as an initial bidding point. We need

presently decide no more since no order of confirmation of any sale is before us. The proposed sale would not in any event result in one group of security holders gaining any advantage over any other since the property was to be sold as a step in its transfer to the City of New York, an outside party. But, all else aside, the finding of the trial judge was supported by the evidence and the upset price he fixed should stand under familiar principles requiring a finding of fact based on real, though disputed, evidence to be given effect by an appellate court. Compare. Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356.

A brief was filed in behalf of certain security holders of both the Interborough Rapid Transit Company and of the Manhattan Railway Company which is devoted mainly to a discussion of the contention that the maintenance of the five cent fare has been responsible for the present financial plight of both corporations and an injustice to their security holders. The sale of any part of the mortgaged property, before some adjustment of the fare, is opposed. Our only comment must be that, whatever may have been the cause, the mortgage is clearly in default and the right of the mortgage trustee to foreclose is equally clear. The brief is concerned with problems of management which do not raise any legal obstacle to the validity of the order and decree involved in this appeal.

At the argument Solomon G. Salomon, a holder of Manhattan Railway Company securities, was granted leave to intervene and file a brief. His brief relies, however, upon the claimed failure of the Interborough Rapid Transit Company to perform its obligations under the lease, and upon its duties and obligations under the provisions of Sec. 24 of the New York Rapid Transit Act, as renumbered by Laws N.Y.1909, c. 498, and section 24a, as added by Laws N.Y.1913, c. 524. But, as we have already pointed out, the right of the mortgage trustee to foreclose and seek satisfaction from the mortgaged property itself is not barred by any failure of a subsequent lessee of the property to perform its obligations. As to the liability of the lessee for any damages occasioned by this foreclosure, decision is reserved.

Affirmed.