
Joe L. HAYES, Appellant,

v.

**ALASKA USA FEDERAL CREDIT UN-
ION, Larry D. Carpenter, Dennis B.
Wise, Kris W. Lethin, the Areo Compa-
ny, Appellees.**

No. S–2557.

Supreme Court of Alaska.

Jan. 20, 1989.

Paul L. Davis, Boyko, Davis, Dennis,
Baldwin & Breeze, Anchorage, for appel-
lant.

Marshall K. Coryell, Coryell & Associ-
ates, Anchorage, for appellees.

## OPINION

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

MOORE, Justice.

This appeal raises two important ques-
tions of first impression in this State: The
first is whether a court may establish a
minimum bid or "upset price" for the sale
of real property at a judicial foreclosure
sale. The second involves the proper stan-
dard governing the establishment of an
upset price. This appeal arises out of a
judicial foreclosure action brought by Alas-
ka USA Federal Credit Union (Alaska USA)
against Joe L. Hayes and several of his
partners. Before entry of summary judg-
ment, Hayes moved for the establishment
of an upset price before the judicial fore-
closure sale. Alaska USA did not oppose
the establishment of an upset price. Rath-
er, it found fault with Hayes' proposed

standard for establishing an upset price. Judge James R. Blair entered summary judgment in favor of Alaska USA and ordered a foreclosure sale of the property with a minimum upset price of $500,000. On appeal, Hayes argues that the court's upset price of $500,000 is inadequate and that the court erred in not appointing a master for purposes of taking evidence to establish a fair and adequate upset price. For the reasons set out below, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 1984, Joe L. Hayes, Larry D. Carpenter, Dennis B. Wise and Kris W. Lethin executed a $500,000 note and deed of trust in favor of Alaska USA. The note was executed to finance the purchase of unimproved commercial real estate located in Fairbanks, Alaska. At that time, the property had an appraised value of $1,089,-000. On November 19, 1985, the same parties executed a second note and deed of trust in favor of Alaska USA for $250,000. As a result of an immediate, precipitous decline in the economy of Fairbanks, Hayes and his partners became unable to make payments on the notes.

On December 26, 1986, Alaska USA filed suit against Hayes and his partners seeking judicial foreclosure and a deficiency judgment. Alaska USA moved for summary judgment. The trial court concluded that the language of the deeds of trust did not preclude judicial foreclosure and granted summary judgment.

Before entry of summary judgment, Hayes filed a motion requesting that an upset price be established in the event that a decree of foreclosure was granted. Hayes contended that since a viable market for real estate no longer existed in the Fairbanks area, establishment of a minimum bid or upset price was needed to ensure a fair price àt the judicial sale. Hayes argued that the upset price should be set at an amount equal to either the amount due Alaska USA or the value of the property. Hayes submitted the affidavit of a real estate appraiser which stated that the property had a present value of $762,000.

Alaska USA, while not contesting the propriety of setting an upset price, opposed Hayes' proposed means for establishing an upset price. Alaska USA argued that the upset price should be set at a figure below $490,000. It asserted that the correct standard for establishing an upset price was an amount slightly more than a court would find grossly inadequate or that would so shock the conscience of the court as to justify a refusal to confirm the sale. In support of its proposed upset price, Alaska USA submitted the opinion of a real estate appraiser that the property was worth $437,500.

On November 14, 1987, Hayes requested the appointment of a master pursuant to Alaska Rule of Civil Procedure 53 in order to hear further evidence on the issue of a fair and reasonable upset price. On December 3, 1987, the trial judge entered judgment in favor of Alaska USA and set an upset price of $500,000 without appointing a master. Hayes appeals.[1]

## II. POWER OF A COURT TO ESTABLISH AN UPSET PRICE IN A JUDICIAL FORECLOSURE SALE

While the parties do not dispute the propriety of establishing an upset price, we initially note that the authority to set an upset price derives from the inherent equitable power of a court to oversee judicial foreclosure sales. It has long been recognized that courts of equity have extensive inherent power in supervising judicial sales and wide discretion in the exercise of that power. Washburn, *The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales*, 53 S.Cal.L. Rev. 843, 855 (1980); *see* G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.16 (2d ed.1985) (hereinafter Nelson); 3 R.

---

**1.** Hayes' partners, Larry D. Carpenter, Dennis B. Wise and Kris W. Lethin, did not join in his appeal.

Powell, *The Law of Real Property* ¶ 466 (1987).

Under Alaska's statutory scheme, a court may refuse to confirm a judicial foreclosure sale on the basis of "substantial irregularities in the proceedings of sale."[2] AS 09.35.180(a). If the court finds substantial irregularity and probable injury, "it shall deny the motion [to confirm] and direct that the property be resold in whole or in part as upon an execution."[3] AS 09.35.180(b).

Construing a very similarly worded statute, the Oregon Supreme Court recognized that courts of equity have the authority to control judicial sales even in the absence of such legislation. *Teachers' Retirement Fund Ass'n v. Pirie,* 150 Or. 435, 46 P.2d 105, 106–07 (1935). In *Pirie,* the Oregon Court stated:

> In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sales and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience.

*Id.* 46 P.2d at 107, *quoting Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 446, 54 S.Ct. 231, 243, 78 L.Ed. 413 (1934).[4] The *Pirie* court concluded that the procedural inadequacy statute did not limit the inherent power of the court to refuse confirmation of a foreclosure sale based upon gross inadequacy of price. *Pirie,* 46 P.2d at 107–08.

In *Federal Title & Mortgage Guaranty Co. v. Lowenstein,* 166 A. 538, 541 (N.J. 1933), the Chancery Court of New Jersey reviewed the history of the equity courts of England and its own constitutional powers derived therefrom and concluded that "quite independently of statute or rule of court, [this court] has inherent power to order a sale of mortgaged premises and to control its process directed to that end." *See also Farmers' & Mechanics' Sav. Bank v. Eagle Bldg. Co.,* 151 Misc. 249, 271 N.Y.S. 306, 311–12 (N.Y.Sup.1934); *Suring State Bank v. Giese,* 210 Wis. 489, 246 N.W. 556, 557 (1933).

■■■■ We conclude that AS 09.35.180 was not intended to limit the traditional equitable authority of a court to refuse confirmation of a judicial sale. Moreover, as part of this inherent judicial authority to control the foreclosure process, a court has discretion whether to set an upset price or not. As the court in *Farmers' & Mechanics' Sav. Bank,* 271 N.Y.S. at 312, explained:

> To fix a price in advance of the sale is merely a convenient and appropriate method of advising the parties of what will be necessary in order that the sale shall meet with the approval of the court and follows as a corollary from the power to vacate the sale for inadequacy.

*See also Manhattan Ry. Co. v. Central Hanover Bank & Trust Co.,* 99 F.2d 789, 792–93 (2d Cir.1938); *Wilson v. Fouke,* 188 Ark. 811, 67 S.W.2d 1030 (1934); *Rosen-*

---

**2.** AS 09.35.180(a) provides in part:

[w]here real property executed upon has been sold, the judgment creditor may, upon motion, apply for an order confirming the sale. The judgment debtor may object to the confirmation of the sale on the grounds that there were substantial irregularities in the proceedings of sale which caused probable loss or injury to the judgment creditor.
*See Queen of the North, Inc. v. LeGrue,* 582 P.2d 144 (Alaska 1978) (failure to list a liquor license in the public notice of sale for a restaurant, bar and hotel held a sufficient irregularity to justify setting aside the sale).

**3.** Under AS 09.35.180(c), the bid of the purchaser at the former sale is renewed and acts as an upset price at the resale. Subsection (d) provides:

An order confirming a sale is a conclusive determination of regularity of the proceedings concerning the sale, as to all persons, in any other action or proceeding.

**4.** An Alaska district court case construing Oregon case law concluded that the Oregon statute, from which Alaska law was derived, allowed for no discretion in rejecting confirmation on grounds other than "substantial irregularities" in the sale. *Mason v. Bennett,* 52 F. 343 (D. Alaska 1892). In light of the Oregon Supreme Court's subsequent opinion in *Pirie,* it is clear that the statute does not limit a trial court's discretion to approve or disapprove a judicial sale.

*ham v. Pottinger*, 60 S.W. 370, 371 (Ky. 1901).

A number of courts have refused to establish an upset price for the initial sale, choosing instead to wait to see if the first sale produces an adequate price. *See Commissioners of Land Office v. Harrower*, 167 Okl. 269, 29 P.2d 123, 130 (1934). As one commentator has noted, courts are hesitant to set an upset price before the initial sale either because of a lack of evidence concerning the property's present value or because of a fear of prejudicing the competitive bidding process. *See* Washburn, *supra* p. 5, at 884.

However, several Depression-era courts did set upset prices in advance of the initial sale. *See Standard Lumber & Mfg. Co. v. Deposit Guar. Bank & Trust Co.*, 169 Miss. 120, 152 So. 639, 641 (1934); *Farmers' & Mechanics' Sav. Bank*, 271 N.Y.S. at 312; *Suring State Bank*, 246 N.W. at 557. These rulings were premised upon the conclusion that the economic depression of the 1930s was so severe as to totally destroy competitive bidding at judicial foreclosure sales. These courts held that, in the absence of competitive bidding, courts had no option but to establish an upset price before sale.

██ We are not convinced that the present state of competitive bidding at judicial foreclosure sales warrants the establishment of an upset price before sale. Establishment of an upset price before sale is a rare remedy.[5] It may be preferable for the court to allow bidding to proceed and then, in ruling on a motion to confirm the sale, determine whether confirmation should be granted or a resale ordered.

In the case before us, however, all the parties agreed to the establishment of an upset price. Therefore, the trial court did not err by establishing a pre-sale upset price.

## III. STANDARD FOR ESTABLISHING AN UPSET PRICE

While Judge Blair set an upset price of $500,000, his order does not set forth the evidence he relied upon in setting the figure or the standard by which he reached that amount.

Alaska USA argues that the standard for establishing an upset price should be a figure slightly above the price at which the court would refuse to withhold confirmation of a judicial sale solely on the grounds that the sale price is inadequate. However, most courts speak of refusing to confirm a sale where there is gross inadequacy of price or inadequacy so extreme as to "shock the conscience" of the court. *See* Washburn, *supra* p. 1159, at 859 & n. 97, 862; Nelson, *supra* p. 1159, at 258 & nn. 25-26. *See also Levy v. Broadway–Carmen Bldg. Corp.*, 366 Ill. 279, 8 N.E.2d 671 (1937) (upholding an upset price using the "grossly inadequate" standard). The policy justifications for a court's refusal to deny confirmation for mere inadequacy of price are threefold. As Washburn explains:

> [T]he rule seeks to protect the parties to the sale by promoting active competitive bidding; if a slight price inadequacy justified voiding the sale, fewer bidders would participate. Competitive bidding is encouraged by the assurance that the court will accept the highest bid absent fraud or misconduct. Thus the rule is intended to benefit the debtor by fostering bidding that will result in a higher price. In those states with redemption statutes, courts refuse to void the sale for inadequacy on the rationale that the mortgagor can protect himself from an unreasonably low bid by reacquiring the property.
>
> A second policy rationale which is implied is that the mortgagee is entitled to have its contract expeditiously enforced, absent fraud or unfair dealing. The borrower is held to assume, as a normal risk, any hardships that fair enforcement of the debt may create.

Washburn, *supra* p. 1159, at 860 (footnotes omitted).

Hayes urges we reject the grossly inadequate standard, citing a number of cases decided during the Depression of the 1930s in which courts departed from the gross

**5.** *See* Washburn, *supra* p. 1159, at 884.

inadequacy standard. In these cases, the courts used their inherent equitable power to set a fair price for the property, because of the total collapse of the real estate market and the resulting failure of competitive bidding to protect the debtor. *See Suring State Bank,* 246 N.W. at 556; *Lowenstein,* 166 A. at 541–42; *Farmers' & Mechanics' Sav. Bank,* 271 N.Y.S. at 312.[6] These decisions adopted a fair price remedy in order to prevent mortgagees from receiving a double recovery by taking the property at a nominal bid at the foreclosure sale and then obtaining a large deficiency judgment against the debtor. Several states have enacted statutes perpetuating the use of the "fair price" standard. Under Washington's statute, the court, "in ordering the sale, may in its discretion, take judicial notice of economic conditions, and after a proper hearing, fix a minimum or upset price to which the mortgaged premises must be bid or sold before confirmation." Wash.Rev. Code Ann. 61.12.060 (West 1961); *see American Fed. Sav. & Loan Ass'n v. McCaffrey,* 107 Wash.2d 181, 728 P.2d 155, 159 (1986) (application of statute's fair value determination).[7] In other states, the courts have judicially limited the fair price standard.[8]

We conclude that current economic conditions in Alaska are not so severe as to eliminate the usefulness of the public bidding process. While the fall in oil prices had produced a serious downturn in our economy, the situation has not reached the magnitude of the nation-wide Depression of the 1930s. In the 1930s, courts were confronted with a situation in which sufficient capital simply did not exist for competitive bidding at foreclosure sales. While Hayes has presented evidence of the increase in bankruptcies and foreclosures in the Fairbanks area since 1985, he has not presented sufficient evidence of the lack of competitive bidding at judicial foreclosure sales so as to justify departure from the traditional "gross inadequacy" standard.[9]

■ Applying this standard to the offset price established in this case, we conclude that the $500,000 figure is more than adequate. Commentators have noted that while there is great subjectivity in the application of the standard, most courts hold that prices above 40% of the property's value are not grossly inadequate. *See* Washburn, *supra* p. 1159, at 866; Nelson, *supra* p. 1159, at 528; *see also Polish Nat'l Alliance v. White Eagle,* 98 A.D.2d 400, 470 N.Y.S.2d 642, 650 (N.Y.App.Div. 1983) (upholding a sale price equal to 37% of value). An upset price of $500,000 in this case represents 65% of Hayes' submitted appraised value of $762,000—an amount clearly above the level which a majority of courts would find grossly inadequate. As a result, we affirm the superior court's upset price figure.

## IV. DID THE COURT ERR IN NOT APPOINTING A MASTER TO HEAR EVIDENCE ON A FAIR AND ADEQUATE UPSET PRICE?

Hayes contends that the trial judge abused his discretion by failing to appoint a

---

**6.** While most courts in the 1930s recognized the hardships facing mortgagors "most followed precedent and refused relief based solely on economic conditions." Washburn, *supra* p. 1159, at 872 & n. 146 (and cases cited therein).

**7.** *See generally,* 3 R. Powell, *The Law of Real Property* ¶¶ 471–74 (1987) (discussing legislative responses to Depression-era foreclosure sales).

**8.** In Wisconsin, the fair price approach has been restricted by later decisions so as to more nearly approximate the traditional "grossly inadequate" standard. *See First Wisconsin Nat'l Bank v. KSW Inv., Inc.,* 71 Wis.2d 359, 238 N.W.2d 123 (1976); *Weimer v. Uthus,* 217 Wis. 56, 258 N.W. 358 (1935); *Kremer v. Rule,* 216 Wis. 331, 257 N.W. 166 (1934). New Jersey has also restricted the application of *Lowenstein's* "fair price" standard, applying an "entirely inadequate" standard during normal economic conditions. *79–83 Thirteenth Ave. v. DeMarco,* 44 N.J. 525, 210 A.2d 401, 406–07 (1965).

**9.** Beyond the protection of public bidding, the Alaska statutory scheme seeks to protect debtors from inadequate foreclosure sale prices through redemption rights. Under AS 09.35.250, a judgment debtor may redeem the property by paying the purchaser at the public sale the amount of the purchase money, plus eight percent interest and taxes, within 12 months of the order of confirmation. While debtors may have difficulty redeeming foreclosed properties, the protection of an upset price to prevent grossly inadequate sale prices, combined with reasonably competitive public bidding, should afford debtors adequate protection.

master pursuant to Alaska Rule of Civil Procedure 53(a). Hayes makes the interrelated argument that by failing to hold an evidentiary hearing on the setting of an upset price, the court violated his due process rights under the federal and Alaska Constitutions.

Rule 53,[10] which governs the appointment of masters, clearly states that the appointment of a master is a matter in the discretion of the trial court judge. Similarly, Rule 77(e) states that except for specific motions, none of which are applicable here, "oral argument shall be granted only in the discretion of the judge."

■ We stated in *Brown v. State*, 563 P.2d 275, 279 (Alaska 1977), that abuse of discretion exists only when the court is "left with the definite and firm conviction on the whole record that the trial judge has made a mistake." In this case, the court had been fully briefed on the issue of an upset price and had before it two appraisals of the present value of the property. We, therefore, conclude that Judge Blair did not abuse his discretion in not appointing a master or in not hearing oral argument.

Hayes' constitutional arguments are without merit. While both parties agree that Hayes possesses a sufficient property interest to entitle him to the protections of due process, this court has made clear that notice and opportunity to be heard must be appropriate to the nature of each case and an appropriate accommodation of the competing interests involved. *Borkowski v. Snowden*, 665 P.2d 22, 27 (Alaska 1983).

In *Johnson v. Johnson*, 544 P.2d 65, 71 (Alaska 1975), this court held that the opportunity to brief an issue and present written arguments during the course of a judicial proceeding suffices to satisfy constitutional due process. Moreover, in *Cleary Diving Service, Inc. v. Thomas, Head and Greisen*, 688 P.2d 940, 942 (Alaska 1984), this court held that oral argument is not required by due process:

Finally, the Clearys' assertion that they were denied due process because no hearing was held on their 60(b) motion is meritless. *See* 7 pt. 2 J. Moore, *Moore's Federal Practice* § 78.02, at 78-4-5 (1984) (while due process requires that a plaintiff must have a fair opportunity to present oral argument, oral argument is not required by due process); 12 C. Wright and A. Miller, *Federal Practice and Procedure* § 3091, at 184 (1973) (no constitutional right to oral argument on motions).

■ While Judge Blair did not hold an evidentiary hearing on the issue of setting an upset price, both parties had ample opportunity to make their views known to the court: both submitted detailed written appraisals as to the property's value and Hayes submitted both a brief and reply brief as to the appropriate figure for an upset price. We therefore conclude that the trial court did not deprive Hayes of his due process rights by not holding an evidentiary hearing on the establishment of an upset price.

The judgment of the superior court is AFFIRMED.

---

**10.** Rule 53(a) provides in part:

The presiding judge of the superior court for each judicial district with the approval of the chief justice of the supreme court *may* appoint one or more standing masters for each district, and the court in which any action is pending *may* appoint a special master therein. (Emphasis added).